### LIBBY, McNEILL AND LIBBY *vs.* SAMUEL LIBBY.

Suffolk.   February 16, 1922. — April 14, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Trade Name. Unlawful Interference. Equity Pleading and Practice,* Master's report. *Equity Jurisdiction,* To enjoin interference with use of trade name.

In a suit by a corporation dealing in meat and other merchandise under the name of "Libby, McNeill & Libby," to enjoin one Samuel Libby from using the name "Libby & Libby" or "Libby" in connection with his business, a master, to whom the suit was referred, in a report which did not contain a report of the evidence, found that the plaintiff was organized in 1907 with headquarters in Chicago and had since the organization continued the business of the packing and sale of meats and other products previously carried on for about twenty years by a partnership known as "Libby, McNeill & Libby" and for about twenty years before that under the name of "A. A. Libby & Company;" that the plaintiff's predecessor established a place of business in Boston in 1901 which, with a change of location, had been conducted continuously since then; that the defendant had conducted a wholesale meat business in Boston since 1910 under the names of "Samuel Lipsky" and "Samuel Lipsky & Company" which, in May, 1920, following a decree of the Probate Court in February, 1920, changing his name to "Samuel Libby," he changed to "Libby & Libby Co. of Massachusetts;" that the defendant in thus changing his name and that of his business was not actuated by a fraudulent intent to deceive; that there was no evidence that the defendant had attempted to pass his business off as or for the business of the plaintiff except as the use of the name "Libby & Libby Co. of Massachusetts" might be regarded as such an attempt; that there was no evidence of any purchaser mistaking the defendant's fresh meats for those of the plaintiff and practically no chance that any one in the trade would buy of the defendant in the belief that he was dealing with the plaintiff or that the sale of the plaintiff's meats at retail would be interfered with by the defendant's use of these names. Upon appeals from interlocutory decrees overruling exceptions of the plaintiff to the master's report, confirming the master's report and denying a motion for an injunction, and from a final decree dismissing the bill, it was *held* that

    (1) The findings of fact of the master must be accepted unless they were plainly wrong;

    (2) On the facts found by the master the plaintiff was not entitled to the injunction prayed for;

    (3) On the record presented there was no error in the interlocutory decrees;

    (4) The final decree dismissing the bill must be affirmed.

BILL IN EQUITY, filed in the Supreme Judicial Court on January 5, 1921, to enjoin the defendant from using the name "Libby & Libby Co." as a business name and from using the name "Libby" in connection with the sale of meats or like merchandise.

The suit was referred to a master who, in a report which did not contain a report of the evidence, found as follows:

"The plaintiff is a corporation organized on May 28, 1907, under the laws of West Virginia. The name of the corporation was originally 'Libby Products Company,' but this was changed, on November 4, 1907, to 'Libby, McNeill & Libby.' The corporation, shortly after its organization, filed with the commissioner of corporations the papers required of foreign corporations doing business in Massachusetts under St. 1903, c. 437, §§ 58 and 60. Since its organization the plaintiff has continued the business previously carried on for about twenty years by a partnership known as 'Libby, McNeill & Libby,' and for about twenty years before that under the name of 'A. A. Libby & Company.' The headquarters of the business have at all times been in Chicago. The business originally included only the packing and sale of meats, but the field has gradually been enlarged, so that the plaintiff now, as for some time past, not only sells fresh, cured, and canned meats, but also deals extensively in pickles, condiments, vegetables, fruits, evaporated milk, salmon, extract of beef, preserves, and jellies.

"All of the plaintiff's products are and always have been of first-class reputation in Boston and vicinity, as well as elsewhere. The plaintiff's products are and for many years have been generally known in the trade as 'Libby's' goods, and seldom, if ever, as 'Libby, McNeill's,' and the plaintiff's business is generally known by the public as 'Libby's.' So far as appears, no other concern having the name 'Libby' or any similar name engaged in the fresh meat business in Boston prior to the defendant's adopting that name as hereinafter stated. For the past twenty years, the plaintiff has constantly advertised its products in the 'Ladies' Home Journal,' 'Good Housekeeping,' and similar periodicals having a general circulation; in these advertisements the plaintiff has often been referred to as 'Libby,' and its products as 'Libby's Milk,' 'Libby's Peaches,' etc.

"The fresh and cured meats produced by the plaintiff were for

many years supplied to the Boston trade through commission merchants who sold to local dealers in their own names. In 1901 the plaintiff's predecessors established a place of business at 33 John Street, Boston, where they carried a stock of their products and engaged in the direct sale of their products to Boston dealers. This place of business was continued by them until 1915, when the plaintiff's Boston office was removed to the corner of Broad and State Streets, and the warehouse to South Boston. In February, 1919, the plaintiff's office was removed to the warehouse at 12 Pittsburgh Street, South Boston, where it has since remained; this location is about a mile from the so called market district, i. e. the neighborhood of Blackstone, North, John, and South Market streets. The plaintiff has no place of business in the market district at the present time and has had none since 1915. Sales of the plaintiff's cut meats to the Boston trade are now mostly made through Chamberlain and Company, commission merchants, who carry a stock of the plaintiff's meats at 24 South Market Street and who sell from this stock in their own name. The meats thus sold are sold as 'Libby's,' and customers wishing to buy them generally ask for 'Libby's cuts.' The sales so made by Chamberlain and Company amounted to about $150,000 from March, 1920, to February, 1921. The business done through the plaintiff's office on Pittsburgh Street extends over all New England; the fresh meat business so done in New England amounted during the past year to somewhere between $1,500,000 and $2,000,000, and the total business done by the plaintiff in New England during the same period to somewhere between $6,000,000 and $7,000,000, but how much of this business was attributable to Boston and vicinity cannot be determined.

"The plaintiff has a valuable good will and reputation attaching to the names 'Libby, McNeill & Libby' and 'Libby's.' These names have been registered as trademarks under the laws of Massachusetts, but it does not appear that the plaintiff has any exclusive right to the use of either of these names in connection with fresh meats as a trademark strictly so called. . . .

"The defendant was born in Vilna, Russia, about thirty-three years ago. Until changed, as hereafter stated, his name was 'Samuel Lipsky.' After coming to the United States, he worked

for a time for his father, who conducted a jobbing beef business on Salem Street, Boston. In 1910 he started in business on his own account at 36 Blackstone Street. From there he removed, in 1911 or 1912, to 34 North Street, and from there, in 1918, to his present place of business at 24 North Street. All these locations are in the so called market district and only a short distance from 33 John Street, where the plaintiff formerly maintained a place of business as stated above."

Other material findings of the master are described in the opinion. The suit was heard by *Crosby*, J., upon exceptions by the plaintiff to the master's report and upon a motion by the plaintiff for an injunction upon the findings in the report. By order of the justice interlocutory decrees were entered overruling the plaintiff's exceptions to the master's report, denying the motion for an injunction and confirming the report and later a final decree was entered by order of *Braley*, J., dismissing the bill. The plaintiff appealed from all the decrees.

*F. H. Nash*, (*E. S. Rogers* of Illinois with him,) for the plaintiff.

*W. J. Drew*, (*A. T. Smith* with him,) for the defendant.

DE COURCY, J. This bill in equity was brought to restrain alleged unfair competition in trade. The case is here on the plaintiff's appeals from interlocutory decrees overruling its exceptions to the master's report, confirming the report, and denying a motion for an injunction; and from the final decree dismissing the bill.

Up to 1920 the defendant, while carrying on business alone, did so under his name "Samuel Lipsky" or "Lipsky & Company." On his application to the Probate Court duly made and published under R. L. c. 154, § 12, his name was changed to Samuel Libby in February, 1920; and in May he changed the name under which he was doing business to "Libby & Libby Co. of Massachusetts." The plaintiff, in support of its motion for an injunction, relies upon the numerous cases where courts have enjoined a competitor from fraudulently putting on the semblance of somebody else, for the purpose of passing off his goods as the goods of that other person. *Samuels* v. *Spitzer*, 177 Mass. 226. *Poiret* v. *Jules Poiret Ltd. & A. F. Nash*, 37 R. P. C. 177. *Wotherspoon* v. *Currie*, L. R. 5 H. L. 508. *Valentine Meat Juice Co.* v. *Valentine Extract Co. Ltd.* 17 R. P. C. 673. *Chas. S. Higgins Co.* v. *Higgins Soap*

*Co.* 144 N. Y. 462. *Herring-Hall-Marvin Safe Co.* v. *Hall's Safe Co.* 208 U. S. 554. The adoption by the defendant of "Libby & Libby Co. of Massachusetts" rather than "Samuel Libby" as the style under which to conduct his business, standing alone might well raise a suspicion that his real intent was to infringe on the plaintiff's proprietary rights. But the record discloses much more. The master, who heard the witnesses, and whose findings of fact we must accept unless they are plainly wrong, specifically finds: "The defendant believed that it would help his business if he adopted an American name, and he chose 'Libby' partly because it closely resembled 'Lipsky' and partly because it was a name carrying prestige in the meat business. I do not find, however, that he chose the name 'Libby' with intent to obtain trade by leading the public to believe that, when dealing with him, they were dealing with the plaintiff, or that he adopted the designation of 'Libby & Libby Co. of Massachusetts' with that object. I am disposed to accept the defendant's explanation that he wished to do business under the name of 'Libby & Libby Co.' in order to give the impression that the business was growing and that he added the words 'of Massachusetts' so as to meet a possible contention that he was holding out his business as that of the plaintiff." He also found: "Shortly after the defendant began to do business under the name of 'Libby & Libby Co. of Massachusetts' the plaintiff learned of the fact and began an investigation into the character of the defendant's business. So far as appears, however, this investigation did not disclose that the defendant was getting any trade away from the plaintiff through the use of the name or was in any other way causing appreciable damage to the plaintiff. Neither is it shown that the defendant has in any way attempted to pass his business off as or for the business of the plaintiff, except as the use of the name 'Libby & Libby Co. of Massachusetts' may be regarded as such an attempt; the defendant has never used in his business the name 'Libby' alone or the name 'McNeill' either alone or in combination with 'Libby.'"

It being established by the master's report that the defendant's conduct was not actuated by a fraudulent intent to deceive, there occurs the further question, whether a manifest liability to deception arises from the mere similarity between the plaintiff's

name and that employed in business by the defendant. Has the name adopted by the defendant misled, or is it likely to mislead, "those with whom the parties deal and among whom they look for business?" *Hub Dress Manuf. Co.* v. *Rottenberg,* 237 Mass. 281, 284. The answer depends upon the facts as found by the master. The defendant does not deal in canned or cured meats, fruits, evaporated milk, jellies or other articles, which constitute so large a portion of the plaintiff's business. The only business in which he could come in conflict with the plaintiff is in the sale of fresh meat at wholesale to other dealers in the market district. He does no retail business. The plaintiff corporation has had no place of business in the market district since 1915. Its cut meats are sold mostly through a firm of commission merchants, who carry a stock of the plaintiff's meats and sell from this stock in their own name. No distinguishing mark has been placed upon fresh meats by either of the parties; and "it would be difficult, if not impossible, even for one familiar with the business, to determine by examining any given piece of fresh meat belonging to the general class dealt in by both parties whether it had been sold by the plaintiff, by the defendant, or by some third person." The master finds that not only was there no evidence of any purchaser's mistaking the defendant's fresh meats for those of the plaintiff, but that "there is practically no chance that any one in the trade will buy of the defendant in the belief that he is dealing with the plaintiff, or that the sale of the plaintiff's meats at retail will be interfered with by the defendant's use of these names." Without reciting further findings as to the failure to show any damage caused by the defendant's use of the name "Libby & Libby Co. of Massachusetts," as he now uses it, we are of opinion that the plaintiff is not entitled to the injunction prayed for, on the facts as found by the master. *Burns* v. *William J. Burns International Detective Agency, Inc.* 235 Mass. 553. *Hub Dress Manuf. Co.* v. *Rottenberg, supra.*

The plaintiff's exceptions to the master's report are largely disposed of by what has been said, and need not be further discussed. It may be added, however, that the findings are based on and confined to the business of the defendant as heretofore conducted, and as interpreted by the master. We are not now concerned with possible future conduct which might give to the

defendant's business methods an aspect materially different from that apparent from the master's report.    On the record now presented we find no error in the interlocutory decrees.    The final decree, dismissing the bill without costs, must be affirmed.

<div align="right">

*Ordered accordingly.*