ECONOMY FOOD PRODUCTS CO. *vs.* ECONOMY GROCERY STORES CORPORATION.

Suffolk.   May 11, 1932. — November 7, 1932.

Present: RUGG, C.J., WAIT, FIELD, & DONAHUE, JJ.

*Trade Name.   Equity Jurisdiction,* To enjoin unfair competition, To enjoin infringement of trade name.

A suit in equity by a corporation known as "Economy Food Products Co." against another corporation known as "Economy Grocery Stores Corporation," to restrain the defendant from using the word "Economy" in its name or in connection with the sale of its products, could not be maintained on the ground of unfair competition, on findings that the plaintiff, which began business shortly before the defendant, dealt in food products entirely at wholesale and operated in a large territory including many States, of which the district surrounding Boston was only a small part; that the defendant operated a chain of stores within the Boston district in which food products were sold at retail; that the plaintiff had not created a secondary meaning to the word "Economy" as indicating itself or its products; and that, although there had been some confusion of the plaintiff and the defendant by customers and others on account of the similarity of names, there had been no attempt by the defendant to pass off its goods as those of the plaintiff, nor fraudulent adoption of a similar name to that of the plaintiff, nor imposition upon the public.

The suit in equity above described not having been commenced until some thirteen years after the plaintiff's officials knew of the defendant's stores and the business done in them, a finding was warranted that, although there had been some confusion of the names of the plaintiff and the defendant and that there was an objectionable similarity between them, the plaintiff was barred by laches from seeking relief under G. L. (Ter. Ed.) c. 155, § 9.

The plaintiff in the suit above described was not entitled to relief under G. L. (Ter. Ed.) c. 110, § 4, since the defendant was not using the plaintiff's name.

BILL IN EQUITY, filed in the Superior Court on September 30, 1930, to enjoin the defendant from "using or doing business under the word 'Economy' or any combination thereof in its name" and from using such word "either alone or in any combination of words in connection with the sale of and/or labels upon its food products whether said word occurs in the name of the defendant or otherwise."

The suit was heard by *Lummus*, J., a stenographer having been appointed under G. L. c. 214, § 24; Equity Rule 29 (1926). Material facts found by the judge are stated in the opinion. By his order a final decree was entered dismissing the bill. The plaintiff appealed.

*L. E. Thayer*, for the plaintiff.

*M. E. Bernkopf*, (*L. M. Ring* with him,) for the defendant.

WAIT, J. The plaintiff, Economy Food Products Co., was incorporated in Massachusetts in 1913, and began to carry on a business in the manufacture and sale of baking preparations, such as prepared and ready mixed flours. From time to time it added new products until it deals in a varied line of groceries. It dealt and deals only at wholesale, seeking especially "institutional" trade, that is, purchases by hospitals, schools, convents, jails, restaurants, but including also householders who are prepared to buy in considerable quantities. It has never maintained a retail store nor sought. purchases by small householders. It has had a factory and office at Cambridge, Massachusetts, and, through correspondence and salesmen, it has dealt with customers throughout a wide territory and in many States. It has used as a mail address, Boston, 41,

the postal district in which Cambridge is located. Up to the date of the hearing its greatest gross business in any year was $330,000 in 1919, not one fifth of it in the Boston district. It never created a secondary meaning to the word "Economy," as indicating itself or its product, known to any large part of the population of Boston and its vicinity. In 1914 one Julius Robbins opened a retail grocery store in Boston which he styled the "Economy" grocery store, and began building up a chain of such stores bearing that name. In 1915 he incorporated, as "Economy Grocery Stores Company," to carry on and enlarge the chain of retail grocery stores. He knew nothing of the Economy Food Products Co. The business, after a period of discouragement, came under direction and control of a nephew under whose management it prospered greatly. Another chain store business was purchased, and, in 1925, the defendant, Economy Grocery Stores Corporation, was chartered in Massachusetts. It took over the business, good will and name of the earlier company; and built up a large chain store business carrying on a wide trade in groceries in Boston and vicinity within a radius of fifteen miles. At the time of the trial it carried on three hundred sixty-two stores, all but two within the territory indicated. Its gross annual sales are in millions of dollars. It has never, knowingly, sought the plaintiff's customers. In 1925 a trade war began between The Great Atlantic and Pacific Tea Company, doing a chain grocery business across the United States of America, the First National Stores Inc., doing a chain grocery business throughout New England, and the defendant, which resulted in sales at a very small margin of profit in the neighborhood trade in Boston and its vicinity. Customers in the Boston district of the plaintiff, in its institutional trade, took the opportunity to buy groceries at low prices; and in some instances dealt with the Economy Grocery Stores Corporation in a mistaken belief that it was the same as the Economy Food Products Co. Some injury to the latter arose, also, from repugnance to deal with chain stores on the part of buyers who connected it in their minds with the former. Mistakes

by transportation and banking companies and in the mails have occurred, owing to the similarity in the names, but have been corrected by the stores company without loss other than delay.

In 1917 Economy Food Products Co. first learned of the Economy Grocery Stores Company. It then wrote calling attention to the use of the word "Economy" by the food products company in its corporate name and as a trademark; and serving notice that if at any time the grocery stores company began to compete with it or to injure it in any way by the use of the word "Economy" it would take legal steps to prevent such use. Again, in July, 1930, the plaintiff's attorney wrote the defendant that interference was resulting through its use of the plaintiff's registered trademark "Economy" and the use of a corporate name so similar as to be taken for that of the food products company. This suit followed in September of 1930. The bill alleged unfair competition by the Economy Grocery Stores Corporation and unlawful use of a corporate name so similar to the plaintiff's as to be likely to be mistaken for it.

The judge found that there was no unfair competition, and no enforceable right to require a change of name. The plaintiff appealed. Without stating the evidence in detail, we are satisfied that it justified findings that, here, there was no secondary meaning attached to the word "Economy" which identified it in the public mind with the plaintiff corporation and its products; no effort by the defendant to pass off its goods as the product of the plaintiff; no intentional invasion of a business field occupied by the plaintiff; no fraudulent adoption of a similar name. In the absence of findings to the contrary, there was no proof of unfair competition, and no basis for the maintenance of a bill to restrain unfair competition. There is here only the all but inevitable diversion of trade which happens from the growing business on the part of the Economy Grocery Stores Corporation in its particular field within part of the greater area in which the Economy Food Products Co. seeks a different class of customers. The law will not in-

terfere to restrain such competition where there exists no conscious intent to injure; no effort to secure for oneself the benefit of another's industry, business capacity and capital outlay; and no harm to the public from imposition through probable confusion. No case cited by the plaintiff compels a different conclusion. In support of our decision we cite only *Tent, Inc.* v. *Burnham,* 269 Mass. 211, and cases cited at pages 213, 214, *John L. Whiting-J. J. Adams Co.* v: *Adams-White Brush Co.* 260 Mass. 137, *Libby, McNeill & Libby* v. *Libby,* 241 Mass. 239, *Hub Dress Manuf. Co.* v. *Rottenberg,* 237 Mass. 281, *C. H. Batchelder & Co. Inc.* v. *Batchelder,* 220 Mass. 42, *Charles Broadway Rouss, Inc.* v. *Winchester Co.* 300 Fed. Rep. 706.

If it were not for the presence of the word "Economy" in the names of the corporations, further discussion would be unnecessary. It remains to consider whether the plaintiff has a standing under our statutes.

Except for details here unimportant, the law now in force with regard to names of corporations is the same which controlled in 1913 when the Economy Food Products Co., in 1915 when the Economy Grocery Stores Company, and in 1925 when the Economy Grocery Stores Corporation received their charters. By G. L. (Ter. Ed.) c. 155, § 9, a corporation organized under the laws of Massachusetts may not assume the name of another corporation established under the laws of the Commonwealth, or of a corporation, firm, association or person carrying on business in Massachusetts at the time of or within three years prior to its organization, "or assume a name so similar thereto as to be likely to be mistaken for it," except with the written consent of that other duly filed. Jurisdiction in equity is conferred to restrain doing business in violation of this statute although the certificate or written articles of the offending corporation may have been approved and a certificate of incorporation may have been issued to it. The similarity must be such that intelligent people will readily confuse the names. *John L. Whiting-J. J. Adams Co.* v. *Adams-White Brush Co.* 260 Mass. 137, 141.

There was evidence that intelligent people had confused

the names here in question. The judge found that there was an objectionable similarity. He also found, however, that the plaintiff had been guilty of such laches in proceeding under the statute that it was precluded from obtaining an injunction. In this the cases sustain him. In *Boston Rubber Shoe Co.* v. *Boston Rubber Co.* 149 Mass. 436 (which was decided before the St. 1891, c. 257, had made explicit provision with regard to corporate names and had given jurisdiction in equity to restrain improper duplication or simulation), this court emphasized the necessity of prompt action if objection were to be taken to a similarity of corporate name, and declared lapse of time to be a good answer to complaint in that regard. There the Boston Rubber Company, which for a period of years had not been in competition with the Boston Rubber Shoe Company, entered upon the manufacture of rubber shoes which competed with the latter's business. The court dismissed quo warranto proceedings to prevent the threatened injury arising from the use by the Boston Rubber Company of its corporate name upon rubber shoes of its manufacture. The decision goes upon grounds not applicable here; but states clearly, at page 441, the principle that unless objection to the use of a corporate name be made with reasonable promptness the courts would not restrain such use. That principle was acted upon in *Council of Jewish Women* v. *Boston Section Council of Jewish Women,* 212 Mass. 219, 224, and in the recent case of *Canadian Club Beverage Co.* v. *Canadian Club Corp.* 268 Mass. 561, 573. It is true that in 1917 the plaintiff warned the Economy Grocery Stores Company from which the defendant acquired name and good will; but we think it did not do enough. The judge found that the warning made no impression on Robbins, and was forgotten long before the incorporation of the defendant. The plaintiff's officials, from 1917 on, knew of the Economy grocery stores and the business done in them. It was the trade war which brought about any appreciable injury; but it was not until 1930 that formal notice was given threatening immediate legal proceedings if the name were continued in use. The right given by G. L. (Ter. Ed.)

c. 155, § 9, differs essentially from the right to be free from unfair competition or unlawful interference with trade-marks or trade names, and from the right given by G. L. (Ter. Ed.) c. 110, § 4. Primarily it is based upon the public right not to be misled by identical or similar corporate names. If a private person wishes to profit by it he should act before lapse of time has permitted equities to grow up in the offender's favor. He should not wait until expenditures of energy and of capital have given a value to the name in the hands of the holder, who may, as is the case here, be innocent of any improper motive in adopting it originally. Compare *Highland Dye Works, Inc.* v. *Anteblian,* 270 Mass. 209, 212. Especially is this so when the words of the name are words in common use to which the prior incorporators have not given a secondary meaning associated with them by the public. Ordinarily no exclusive right could be acquired in such a word. *Tent, Inc.* v. *Burnham,* 269 Mass. 211. What period of time and what circumstances will bar relief in any particular case must depend upon the facts of that case. In the one before us, we find no error in the finding of laches as a bar to relief under the statute cited.

The plaintiff has no remedy by virtue of G. L. (Ter. Ed.) c. 110, § 4. That statute relates to the right to restrain the use of the name of the plaintiff or of a deceased person represented by the plaintiff. *Lodge* v. *Weld,* 139 Mass. 499. The defendant is not using the plaintiff's name. It is using its own. A name such as the plaintiff's cannot be broken into component parts and the use of a part be restrained under this statute. *Carney Hospital* v. *McDonald,* 227 Mass. 231. All that the plaintiff complains of is the use of the word "Economy." That is not the plaintiff's name. Its name is Economy Food Products Co.

*Decree affirmed with costs.*