FIRST NATIONAL STORES INC. *vs*. FIRST NATIONAL LIQUOR
COMPANY.

Suffolk.    December 7, 1943. — June 26, 1944.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, RONAN, WILKINS, &
SPALDING, JJ.

*Name.    Corporation*, Name.    *Unlawful Interference.    Words,* "First
National."

There was not such similarity as would justify relief under G. L. (Ter.
Ed.) c. 155, § 9, between the name "First National Liquor Company"
of a corporation operating a retail liquor store and the name "First
National Stores Inc." of another corporation operating a chain of
retail food stores, one of which was near the liquor store.

BILL IN EQUITY, filed in the Superior Court on March 23,
1942.

The suit was heard by *Cabot*, J., who found "that the
name of the defendant is so similar to that of the plaintiff
as to be likely to be mistaken for it by persons of reason-
able intelligence and understanding," and by whose order
a final decree was entered enjoining the defendant "from
using the corporate name, First National Liquor Company,
or from using any other corporate name in which the words
'First' and 'National' in juxtaposition are used." The
defendant appealed.

The case was argued at the bar in December, 1943,
before *Field*, C.J., *Donahue*, *Lummus*, & *Qua*, JJ., and
after the retirement of *Donahue* & *Cox*, JJ., was submitted
on briefs to *Dolan*, *Ronan*, *Wilkins*, & *Spalding*, JJ.

*V. L. Hennessy*, for the defendant.

*A. L. Hyland*, (*J. D. Hanify* with him,) for the plaintiff.

QUA, J. The first paragraph of the bill alleges that this
proceeding is brought under the provisions of G. L. (Ter.
Ed.) c. 155, § 9. That section (since amended in respects
not now material by St. 1943, c. 295) provided in part that
a corporation organized under general laws should not as-
sume the name of another corporation previously established

under the laws of the Commonwealth, or of a corporation carrying on business in the Commonwealth, or "a name so similar thereto as to be likely to be mistaken for it," except with the written consent of the existing corporation. The statute conferred jurisdiction upon the Supreme Judicial Court and the Superior Court to enjoin the new corporation from doing business under a name assumed in violation of the section, even though a certificate of incorporation had been issued to it. After the incorporation of the plaintiff as "First National Stores Inc." the defendant, which was originally incorporated as "San Clemente Company," assumed, with the approval of the commissioner of corporations and taxation, the name "First National Liquor Company."

We accept the statement of the plaintiff both in the bill and in its brief that this proceeding is under the statute, although some allegations of the bill and some of the evidence might be thought to extend slightly beyond the limits of a proceeding solely under the statute. Compare *Staples Coal Co.* v. *City Fuel Co., ante,* 503. Under the statute the question to be decided is whether the name "First National Liquor Company" is so similar to the name "First National Stores Inc." as to be likely to be mistaken for it by "a person of average intelligence." *John L. Whiting–J. J. Adams Co.* v. *Adams–White Brush Co.* 260 Mass. 137, 141. *National Shoe Corp.* v. *National Shoe Manuf. Co. Inc.* 302 Mass. 449, 451.

Evidence received at the hearing added but little to that supplied by a mere comparison of the two names. It appeared that the defendant had a store on Hanover Street in Boston, and that it sold liquors and no foods; and that the plaintiff maintained one of its eighteen hundred fifty stores on Salem Street about a block from the defendant's store and sold no liquors in this Commonwealth.[1] It seems to have been assumed at the hearing that the plaintiff dealt in foods, an assumption in which we think we are justified in joining. So far as appears the only article sold in both the plaintiff's Salem Street store and the defendant's store was

---

[1] The plaintiff sold beer in Connecticut and beer and wine in Vermont.

ginger ale, and it did not appear that there was competition between the stores. There was evidence of similarity in some respects and of difference in other respects between the signs upon the two stores bearing their respective owners' names, but this relates to the manner of dressing the store fronts and not to the similarity of the names themselves. In its aspect most favorable to the plaintiff the case turns upon the degree of similarity of the two names as applied respectively to a retail food business and to a retail liquor business in the same area, but not in competition with each other, and upon the likelihood of the name of the owner of the liquor business being mistaken for the name of the owner of the food business.

The trial judge decided the question of fact in favor of the plaintiff. Nothing turns, however, upon conflicting testimony or upon the credit to be given to opposing witnesses. We are in as good a position to decide the issue as was the trial judge. *Newburyport Society for the Relief of Aged Women* v. *Noyes*, 287 Mass. 530, 532–533. *Veazie* v. *Staples*, 309 Mass. 123, 127.

The only similarity between the two names is found in the identity of the first two out of the four words respectively comprising each name. The last two words are wholly different. The words "First National" belong to a well known type of rather grandiloquent and often presumptuous epithets frequently used at the beginning of corporate and business names. Other words of the same type coming readily to mind are "International," "American," "Federal," "Metropolitan," "Capital," "County," "City," and so forth.[1] Place names such as "Boston" or "Connecticut Valley" are similarly used. We do not believe that these epithets are taken very seriously by the public. It is generally understood that the same expression is employed, often with little justification, by many persons and corporations, and that its use in different places and especially in different lines of business does not indicate

---

[1] Business corporations, banks, and insurance companies are forbidden to take "Commonwealth," "State," and "United States" as part of their corporate names by G. L. (Ter. Ed.) c. 155, § 9, in its present form after amendment by St. 1938, c. 327.

identity of proprietorship. For example, few people of intelligence would be likely to mistake the name "Boston Liquor Company" for the name "Boston Stores Inc." We are not convinced that it is otherwise when the common epithet is "National" or "First National." Moreover, the word "Liquor" in the name of the defendant points to a special kind of business in which the plaintiff was not here engaged, and the word "Stores" in the name of the plaintiff suggests a group of stores, which the defendant did not have. If material in a proceeding of this kind, there is nothing to show that the words "First National" had acquired in the liquor business a secondary meaning designating the plaintiff. It does not seem to us that the situation is altered by any association in the public mind between the food business and the liquor business as now carried on.

The decided cases depend upon special considerations in each case and are not particularly helpful. In *International Trust Co.* v. *International Loan & Trust Co.* 153 Mass. 271, it was held that the defendant's name was "so nearly identical with the plaintiff's that it would mislead" (page 276), but that if the words "of Kansas City" were added, it would not (page 277). In *Burns* v. *William J. Burns International Detective Agency, Inc.* 235 Mass. 553, it was held that the similarity between the names "Burns Detective Bureau" and "William J. Burns International Detective Agency, Inc." did not call for injunctive relief. In *Hub Dress Manuf. Co.* v. *Rottenberg*, 237 Mass. 281, it was held that the use by the defendants of the name "Hub Novelty Dress Company" was not unfair to the plaintiff, where both were engaged in the manufacture of dresses but were not competitors. In *Libby, McNeill & Libby* v. *Libby*, 241 Mass. 239, it was held that the defendant's use of the name "Libby & Libby Co. of Massachusetts" was not likely to mislead where, although both the plaintiff and the defendant were engaged in branches of the meat business, they came only slightly into conflict in the market. In *John L. Whiting–J. J. Adams Co.* v. *Adams–White Brush Co.* 260 Mass. 137, where both corporations manufactured brushes, this court said, at page 141, "There is in fact no such

identity or likeness in the two names as to deceive one of ordinary prudence or to justify the interference of a court of equity." In *Highland Dye Works, Inc.* v. *Anteblian,* 270 Mass. 209, it was held that an exception would not lie to the master's finding that "Highland Dye House" was not likely to be confused with "Highland Dye Works" by persons of ordinary intelligence (page 212), but other elements entered into the decision of the case. In *National Shoe Corp.* v. *National Shoe Manuf. Co. Inc.* 302 Mass. 449, where the factories of the respective parties were located in different cities and did not make shoes of the same character and price, we refused to disturb an implied finding "to the effect that a person of average intelligence would not be misled or readily confused." Page 452. See *C. H. Batchelder & Co. Inc.* v. *Batchelder,* 220 Mass. 42; *Canadian Club Beverage Co.* v. *Canadian Club Corp.* 268 Mass. 561; *Tent, Inc.* v. *Burnham,* 269 Mass. 211; *Economy Food Products Co.* v. *Economy Grocery Stores Corp.* 281 Mass. 57; *Women's Mutual Benefit Society, St. Mary of Carmen* v. *Catholic Society Feminine of Maria, S. S. of Monte Carmelo,* 304 Mass. 349; and *China Clipper Restaurant, Inc.* v. *Yue Joe,* 312 Mass. 540. We have examined decisions in other jurisdictions cited by the plaintiff. Many are collected in 66 Am. L. R. 971 and in 115 Am. L. R. 1241. It may be that their general trend is more favorable to the plaintiff than that of our own cases; but they are not decisive on the question of fact here presented.

We conclude that the corporate name of the defendant is not "so similar to that of the plaintiff as to be likely to be mistaken for it," within the meaning of G. L. (Ter. Ed.) c. 155, § 9, as amended.

There is before us an appeal from an interlocutory decree overruling the defendant's demurrer to the bill. This appeal has become unimportant, since we have dealt with the case broadly on its merits.

> *Appeal from interlocutory decree dismissed.*
>
> *Final decree reversed.*
>
> *Decree to be entered dismissing the bill with costs.*