SKIL CORPORATION *vs.* JAMES R. BARNET.

Suffolk. February 4, 1958. — May 7, 1958.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Trade Name. Trade Mark. Unfair Competition. Equity Pleading and Practice,* Findings by judge.

The plaintiff in a suit in equity in which the trial judge filed findings of fact and an order for decree dismissing the bill and then resigned from the trial court was not prejudiced by lack of a report of material facts under G. L. c. 214, § 23, as appearing in St. 1947, c. 365, § 2, where the facts found by the judge appeared to be the basis for his order for decree and the evidence was reported on appeal and much of it was documentary and little of the oral testimony was conflicting. [487–488]

Discussion of G. L. c. 110, § 7A, inserted by St. 1947, c. 307, as construed and applied by Federal courts. [489–490]

A corporation named "Skil Corporation," engaged for many years in the manufacture and sale in many States of portable electric hand tools and accessories bearing the trade mark "Skil," would be entitled to appropriate injunctive relief under G. L. c. 110, § 7A, inserted by St. 1947, c. 307, against use of the trade mark "Skill Built" and the name "Skill Built Tool Company" by an individual recently engaged in selling indoor outdoor thermometers and portable charcoal grills bearing the trade mark "Skill Built" throughout Massachusetts in many hardware stores carrying the corporation's products, upon proof that "Skil" as applied to power tools and accessories had come to have a secondary meaning in Massachusetts as referring to the corporation's

products and that there was reasonable probability that such individual, even in the absence of actual competition with the corporation, by use of his trade mark and name might detract from the reputation created by the corporation in connection with its trade mark and name. [491]

Evidence warranted a conclusion that the trade mark "Skil," as applied to portable electric hand tools and accessories, had acquired a secondary meaning as referring to the power tools and accessories manufactured and sold for many years through hardware and tool stores in Massachusetts and many other States by a corporation named "Skil Corporation," and entitled the corporation, under G. L. (Ter. Ed.) c. 110, § 7A, inserted by St. 1947, c. 307, to an order in equity that an individual, who had recently entered the hardware field with products unlike those of the corporation and not in actual competition therewith and who used the trade mark "Skill Built" and the name "Skill Built Tool Company" in connection with his products, in selling and advertising products of a type ordinarily sold in hardware or tool stores, bearing the mark "Skill Built" or described as made or distributed by the Skill Built Tool Company, use as a prefix in connection with those words, and with equal emphasis, some other distinctive word. [493–495]

BILL IN EQUITY, filed in the Superior Court on May 9, 1956.

The suit was heard by *Beaudreau,* J.

*Gerald May,* for the plaintiff.

*Robert S. Sanborn,* (*George P. Dike & Joseph F. O'Connell, Jr.,* with him,) for the defendant.

CUTTER, J. This is a bill in equity to enjoin the defendant from using the trade mark "Skill Built" and the name "Skill Built Tool Company" and for an assessment of damages and accounting. The trial judge made findings, stated below. From a final decree dismissing the bill, the plaintiff appeals.

The plaintiff has branch offices in thirty-three States. Starting in 1924 it, or a predecessor corporation, sold portable electric saws under the trade mark "Skil Saw" and "for at least the past ten years" it has had "a complete line of portable electric hand tools and accessories," all of which are sold under the trade mark Skil. The trade mark Skil Saw was registered in the patent office in 1925 and "the registration . . . is subsisting." The mark Skil was registered in Massachusetts in 1947. See G. L. (Ter. Ed.) c. 110, § 8.

The defendant engages in business in Wellesley as an individual under several names. He "registered the business style Skill Built Tool Company" with the town clerk in 1953. In 1954 he began a radio advertising campaign for an indoor outdoor thermometer, selling for $3.98 at retail, on which he uses the trade mark Skill Built. In 1955 he applied this mark to a portable charcoal grill which sells at retail for $5.95. The defendant also sells hand saws which do not bear the trade mark Skill Built. The thermometer and broiler are sold throughout Massachusetts in many hardware stores carrying the plaintiff's Skil products.

The judge's principal conclusions were (a) that the "plaintiff and the defendant are not business competitors"; (b) that the thermometer and grill differ from the plaintiff's power tools; (c) that "if the word Skil has obtained a secondary meaning . . . it has applied only to the plaintiff's power tools"; (d) that no evidence was offered by the plaintiff of "injury to its business reputation or dilution of the distinctive quality of its trade mark"; (e) that "the only testimony of confusion was that of three people . . . in Massachusetts" by events occurring after the bill was filed; (f) that, "except in two isolated instances," Skill Built "has not misled anybody, and . . . is not likely to mislead those . . . [among] whom the parties . . . look for business"; and (g) that the "defendant has not attempted to pass off his goods as the plaintiff's or to deceive the public" into thinking "that they are . . . [dealing] with the plaintiff."

1. The judge filed his findings of fact and order for decree on November 29, 1956. He resigned from the Superior Court on December 1, 1956. The plaintff contends that it was thereby deprived of a report of material facts under G. L. c. 214, § 23, as appearing in St. 1947, c. 365, § 2. The findings were obviously the facts relied upon by the judge in framing his order for a decree. See *Fields* v. *Paraskis,* 318 Mass. 726, 727–728. If the judge had adopted these findings as a report under § 23 (see *Acacia Mutual Life Ins. Co.* v. *Feinberg,* 318 Mass. 246, 247), the plaintiff at

most could have requested the judge to amplify his findings. He would not have been bound to do so. *Adams* v. *Adams,* 308 Mass. 584, 587. *Colby* v. *Callahan,* 311 Mass. 727, 728. See *Berman* v. *Coakley,* 257 Mass. 159, 161–162; *Plumer* v. *Houghton & Dutton Co.* 277 Mass. 209, 214–215. Compare *Birnbaum* v. *Pamoukis,* 301 Mass. 559, 561–562.

Since the evidence is reported, we must decide the case according to our judgment as to the facts, giving due weight to the judge's findings. *Lowell Bar Association* v. *Loeb,* 315 Mass. 176, 178. See *Carroll* v. *Markey,* 321 Mass. 87, 88. Little, if any, of the oral testimony seems conflicting and much evidence was documentary. We thus are more nearly than in many cases in as good a position as the trial judge to appraise the evidence. See *Bratt* v. *Cox,* 290 Mass. 553, 557–558; *Berry* v. *Kyes,* 304 Mass. 56, 57–58. See also *First National Stores Inc.* v. *First National Liquor Co.* 316 Mass. 538, 540; *Mendelsohn* v. *Leather Manuf. Corp.* 326 Mass. 226, 236–237; *Mellon National Bank & Trust Co.* v. *Commissioner of Corporations & Taxation,* 327 Mass. 631, 632. In view of the scope of the available review, the plaintiff has not been prejudiced by the fact that the findings were not technically a report under § 23.

2. There was no direct competition between the parties on like products. On this account, the plaintiff might not have been entitled to injunctive relief under the Massachusetts authorities prior to the enactment of St. 1947, c. 307, inserting a new § 7A in G. L. c. 110, despite suggestions in *265 Tremont Street, Inc.* v. *Hamilburg,* 321 Mass. 353, 356–358, that the trend of decisions was then away from any requirement of direct competition as a basis for relief from unfair competition. See *Silbert* v. *Kerstein,* 318 Mass. 476, 479–482; *National Fruit Product Co. Inc.* v. *Dwinell-Wright Co.* 47 F. Supp. 499, 509 (D. Mass.), aff'd sub nom. *Dwinell-Wright Co.* v. *National Fruit Product Co. Inc.* 140 F. 2d 618 (1st Cir.).[1]

---

[1] See also older cases as to likelihood of confusion, such as *First National Stores Inc.* v. *First National Liquor Co.* 316 Mass. 538, 539, 541–542; *Thomas Kerfoot & Co. Ltd.* v. *Louis K. Liggett Co.* 67 F. 2d 214, 215 (1st Cir.); *Coca-Cola Co.* v. *Snow Crest Beverages, Inc.* 64 F. Supp. 980, 990 (D. Mass.).

The plaintiff, however, seeks relief under § 7A, which reads: "Likelihood of injury to business reputation or of dilution of the distinctive quality of a trade name or trademark shall be a ground for injunctive relief in cases of trademark infringement or unfair competition notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services." The legislative history of the section throws little light upon its purpose,[1] and thus far the Massachusetts courts have had little occasion to consider the section. See *265 Tremont Street, Inc.* v. *Hamilburg,* 321 Mass. 353, 356–358; *Healer* v. *Bloomberg Bros. Inc.* 321 Mass. 476; *Jays Inc.* v. *Jay-Originals Inc.* 321 Mass. 737, 742; *Mann* v. *Parkway Motor Sales, Inc.* 324 Mass. 151, 157; *New England Telephone & Telegraph Co.* v. *National Merchandising Corp.* 335 Mass. 658, 666.

Section 7A has been considered more comprehensively by the Federal courts. In *Food Fair Stores, Inc.* v. *Food Fair, Inc.* 83 F. Supp. 445, 450–451 (D. Mass.), it was held (1) that § 7A created a new ground of injunction and also substantive rights; (2) that "the statute was . . . designed to make the Massachusetts law go at least as far as the unfair competition rules laid down in federal courts before . . . *Erie Railroad Co.* v. *Tompkins,* 304 U. S. 64 . . . and as far as the Restatement of Torts"; (3) that the reference to "likelihood of injury to business reputation" in the statute authorized relief (notwithstanding the absence of direct competition) against a person borrowing a plaintiff's trade name; even though the borrower "does not tarnish it, or divert any sales by its use"; "even though [the] defendant's . . . [product] is of premier quality and even though only a few average customers would be confused";

<hr>

[1] See 1947 House Doc. Nos. 656 and 1865, the latter of which would have prohibited the use "for the first time, as a business name, trade mark, or label . . . [of] any unique symbol or coined or peculiar word or words," used and recorded in Massachusetts by others, without the consent of the owner. 1947 Senate Bill No. 528 changed the language to the substantially broader form now found in § 7A. See *Food Fair Stores, Inc.* v. *Food Fair, Inc.* 83 F. Supp. 445, 450 (D. Mass.); Derenberg, The Problem of Trademark Dilution and the Antidilution Statutes, 44 Cal. L. Rev. 439, 452–459; Note, 27 B. U. L. Rev. 489.

Skil Corp. *v.* Barnet.

and (4) that the statutory words "likelihood of dilution of the distinctive quality of a trade name" authorized the protection by injunction of "not merely a distinctive trade name such as a coined word but also the . . . characteristic quality inherent in any valid trade name after it has acquired a distinct secondary meaning." The Court of Appeals (177 F. 2d 177) affirmed the District Court's decree prohibiting the defendant from using the name Food Fair in connection with its Brookline retail grocery store unless such words were prefaced by a descriptive word or words to distinguish it from connection with the plaintiff's out-of-State stores. See *Libby, McNeill & Libby* v. *Libby,* 103 F. Supp. 968, 970 (D. Mass.).

*Esquire, Inc.* v. *Esquire Slipper Manuf. Co. Inc.* 139 F. Supp. 228 (D. Mass.), involved the efforts of the magazine Esquire to enjoin the use of that name in connection with the defendant's corporate name and its men's slipper business. The judge declined to enjoin under § 7A use of the word "Esquire" in the defendant's corporate name partly because of the defendant's assurances that it would discontinue the use of the name on merchandise. The Court of Appeals (243 F. 2d 540, 546) vacated the judgment of the District Court and ordered an injunction entered prohibiting the defendant from using the name Esquire on products in violation of its assurances. It also construed § 7A as *permitting,* but not as *requiring,* injunctions grounded on dilution consistently with the "traditionally flexible equity practice of granting or withholding injunctive relief in the exercise of sound judicial discretion" (page 544).[1]

For present purposes, it is sufficient to state that § 7A goes at least as far as the *Food Fair, Libby,* and *Esquire* cases

[1] Other Federal cases discussing § 7A are: *R. P. Hazzard Co.* v. *Emerson's Shoes, Inc.* 89 F. Supp. 211, 217 (D. Mass.), and *Sterling Brewing, Inc.* v. *Cold Spring Brewing Corp.* 100 F. Supp. 412, 416 (D. Mass.); *Q-Tips, Inc.* v. *Johnson & Johnson,* 108 F. Supp. 845, 866–867 (D. N. J.), see *S. C.* on appeal 206 F. 2d 144 (3d Cir.), cert. den. sub nom. *Johnson & Johnson* v. *Q-Tips, Inc.* 346 U. S. 867; *Dobeckmun Co.* v. *Boston Packaging Machinery Co.* 139 F. Supp. 321, 323 (D. Mass.). See *Pep Boys-Manny, Moe & Jack* v. *Pilavin,* 77 U. S. P. Q. 265, 267 (D. Mass.); *Cole of California, Inc.* v. *Colette of California, Inc.* 79 U. S. P. Q. 267, 269 (D. Mass.); Callmann, Unfair Competition & Trade-Marks (2d ed.) § 84.2.

suggest, without determining what are the limits of its applicability. Under § 7A, injunctive relief is permissible in the present case, if the plaintiff has proved (a) that Skil as applied to power tools, accessories, and related hardware, although not a unique trade name, has come to have a secondary meaning in Massachusetts as referring to the plaintiff's products, for persons trading in or purchasing such items; and (b) that there is reasonable probability that the defendant, even in the absence of actual competition with the plaintiff, by use of the name may detract from the reputation created by the plaintiff in connection with its trade name or marks.[1] In addition, on general equitable principles, any possibility that the defendant may confuse the public as to the source of the goods sold by him may be given consideration.

3. Skil is obviously a misspelling of an English word in common use, and would not be a valid trade mark, if the word "skill" in its application to the plaintiff's product would not be. See Restatement: Torts, § 725. Compare greater protection given to wholly coined names, Nims, Unfair Competition & Trade Marks (4th ed.) § 202. Skil, however, is applied in a somewhat imaginative sense to inanimate tools which, apart from their users or manufacturer, are not related to skills. It thus is more than merely descriptive (compare *Randolph Refining Corp.* v. *Shapiro,* 333 Mass. 506, 509) and can constitute a valid trade mark, which is entitled to protection from infringement and from unfair competition, at least to the extent that it has acquired a secondary meaning. See *Reading Stove Works, Orr, Painter & Co.* v. *S. M. Howes Co.* 201 Mass. 437, 438 ("Sunshine" as applied to stoves); *Jenney Manuf. Co.* v. *Leader Filling Stations Corp.* 291 Mass. 394, 397–399 ("Aero" as applied

---

[1] With respect to the so called "dilution" problem, see Deering, Trade-Marks on Noncompetitive Products, 36 Ore. L. Rev. 1, 17; Derenberg, Tenth Year of Trademark Act of 1946, 47 Trade-Mark Rep. 879, 951–954; Middleton, Some Reflections on Dilution, 42 Trade-Mark Rep. 175, 181–184; Middleton, Some Aspects of Trademark Dilution, 47 Trade-Mark Rep. 1023; Notes, 12 N. Y. U. Intra. L. Rev. 79, 84–92; 36 N. C. L. Rev. 105; Developments in the Law: Trade-Marks and Unfair Competition, 68 Harv. L. Rev. 814, 843–856.

to gasoline); *Grills* v. *Miller*, 322 Mass. 21, 27–28 ("Seal-skin" apparently assumed to be valid as applied to cosmetic cream); Restatement: Torts, § 715, comment c; Nims, Unfair Competition & Trade Marks (4th ed.) § 203. See also Chafee, Unfair Competition, 53 Harv. L. Rev. 1289, 1293–1294, 1297. Compare *Lusta-Foame Co.* v. *Wm. Filene's Sons Co.* 66 F. Supp. 517, 519 (D. Mass.).

The judge did not make complete findings on the issue of secondary meaning. Accordingly, we find the facts set forth below, supplementing those, already summarized, found by the judge.

The plaintiff has manufactured for at least fourteen years approximately one hundred fifty different tools and about one thousand different accessories, including saws, blades, drills, sanders, grinders, trimmers, and polishers. These vary in price from less than one dollar for some accessories to over one hundred dollars for some more elaborate tools.

The products are divided into (a) the builder's line, sold generally through wholesalers who sell to retailers who in turn sell to carpenters, mechanics, and home users; and (b) the industrial line of heavy duty tools, sold to industrial supply houses. To each tool a metal name plate bearing the word Skil and the plaintiff's corporate name has been attached since at least 1945. These words appear in all advertising material. The plaintiff's portable saws also bear the trade mark Skilsaw.

In the years 1946 to 1956, the plaintiff spent some $5,515,-000 for advertising, including expenditures for space in magazines of both general (for example, Life, Saturday Evening Post, Popular Mechanics) and limited circulation and for catalogs, mailers, displays, mats supplied to retailers, booklets, and other printed advertising. Twenty-one Massachusetts dealers in 1956 applied for advertising mats, apparently for use on their own account for retail advertising that they sold Skil products, a matter of significance in showing that to them the name had value with respect to selling the plaintiff's products. In Massachusetts, besides a

branch office, the plaintiff had sixty-one distributors handling its industrial line and eleven wholesalers selling its builder's line to about eight hundred retail outlets, including hardware and appliance stores and garden centers. The plaintiff had gross sales in 1955 of about $17,000,000. New England sales amount to about $750,000 per year and Massachusetts sales to about $250,000.

Established competitors of the plaintiff regard it as a leading and effective producer of tools and as one of the "names that have become a part of the hardware trade" like Stanley, Corbin, Yale, Black and Decker, and Millers Falls, whose products "qualitywise . . . are all in the top group." They associate Skil, in connection with items sold in hardware stores, with the plaintiff. The plaintiff has had some success in protecting its trade marks and name from use by others, particularly by voluntary action of alleged infringers with respect to competitive items.

More adequate evidence of consumer and market attitude would have been helpful. See *American Luggage Works, Inc.* v. *United States Trunk Co. Inc.* 158 F. Supp. 50 (D. Mass.). We conclude, however, that Skil as a trade mark has acquired a secondary meaning in relation to power tools and accessories. This conclusion is consistent with the somewhat ambiguous finding of the trial judge and with the statement in the defendant's answer that the plaintiff's marks and names "have acquired no secondary meaning *except as applied to the portable electric power tools made by [the] plaintiff . . .*" (emphasis supplied).

The defendant entered the hardware field in 1952. He has sold hand saws by mail and through door to door salesmen. Thermometers, grills, key identifiers, and anemometers he sells under the Skill Built name, partly through hardware stores. The defendant in the first nine months of 1956 spent over $36,000 advertising grills and thermometers on the radio under the name Skill Built. He also advertised by store counter cards, catalogs, and mail flyers.

There has been confusion, referred to in the judge's findings, on occasions apparently not numerous, on the part

of customers of the plaintiff and others as a result of the defendant's activities. In addition there have been somewhat more numerous (about twenty-five in six months) telephone inquiries of the plaintiff about items mentioned in the defendant's radio advertising.

4. The fact that, in the limited field of tools and related products, the plaintiff's marks have an established secondary meaning is sufficient to lead us to grant carefully limited relief under § 7A against action of the defendant which is likely to˙ dilute the distinctive quality of the plaintiff's marks in that field. In doing so we take into account, among others, the considerations listed below. See Restatement: Torts, § 731. (a) There is a substantial possibility that dilution of the distinctive quality of the plaintiff's marks, in their special field, as well as some confusion, will result from the defendant's actions even if there is now little actual confusion and damage. See *Monroe Stationers & Printers, Inc.* v. *Munroe Stationers, Inc.* 332 Mass. 278, 280–281; Restatement: Torts, § 730. This possibility is emphasized by the facts that the defendant's items like the plaintiff's are distributed partly through hardware stores; that in the defendant's radio advertising the spelling differences between the plaintiff's mark and the defendant's trade name will not be apparent; and that the defendant uses the word "tool" in its trade name, although he sells no tools under that name. (b) The plaintiff used and registered its marks well before the defendant in 1953 made any use of the words "Skill Built." (c) Although Skil as a mark is not as easy to protect as a more unique one, its secondary meaning can be protected to an appropriately limited extent. See *Food Fair Stores, Inc.* v. *Food Fair, Inc.* 177 F. 2d 177, 185 (1st Cir.). (d) The risk of damage to the plaintiff's marks in their proper field is not sufficient to require the defendant to abandon the trade name "Skill Built Tool Company." These considerations, on balance, lead us to require that the defendant in selling and advertising tools and other products of a type ordinarily sold in hardware or tool stores, bearing the mark "Skill Built" or

described as made or distributed by the Skill Built Tool Company, use as a prefix in connection with these words, and with equal emphasis, some other distinctive word such as his own name or the name of the town where his business is conducted, for example, "Barnet Skill Built Thermometer." This limited relief will impose no unreasonable burden upon the defendant, who, unnecessarily (see *Jays Inc.* v. *Jay-Originals Inc.* 321 Mass. 737, 740–741) even if unintentionally, moved into a position where he could do some "free riding" (see the *Esquire* cases, 139 F. Supp. 228, 231, and 243 F. 2d 540, 545) on the plaintiff's business reputation, to the damage of the plaintiff's mark.

5. This is not a case where the proof warrants an award of damages or an accounting of profits, if, indeed, the plaintiff still asks such relief.

6. The final decree is reversed and a new final decree is to be entered consistent with this opinion. Neither party is to have costs of this appeal.

*So ordered.*