GENERAL FRUIT STORES, INC. *vs.* JOHN H. MARKARIAN.

Worcester.    December 9, 1937. — March 29, 1938.

Present: RUGG, C.J., FIELD, LUMMUS, QUA, & COX, JJ.

*Unlawful Interference.    Trade Name.*

One who for years had done business under the trade name "United Fruit Stores" and recently had begun to use and display the name "United Public Markets" and who was commonly known as "the United," was entitled to an injunction restraining a new competitor opening a nearby store from using the trade name "United Markets" in a way calculated to induce the public to trade with him under the belief that they were trading with the plaintiff.

BILL IN EQUITY, filed in the Superior Court on April 27, 1937.

The plaintiff appealed from decrees entered by order of *Burns*, J.

*S. Lurier*, for the plaintiff.

*G. S. Taft*, for the defendant.

Cox, J.    The plaintiff seeks to enjoin the defendant from using the name "United Markets" in the city of Worcester, and from advertising or exhibiting signs bearing that name in connection with his store in that city.    The suit was referred to a master whose report, except as modified by the sustaining of certain exceptions of the defendant, as hereinafter appears, was confirmed by an interlocutory decree.    A final decree dismissing the bill was entered. The plaintiff appealed from both decrees.    The evidence is not reported and the master's findings of fact are conclusive unless it appears from the report itself that they are plainly wrong    *Martin* v. *Barnes*, 214 Mass. 29.    *MacLeod* v. *Davis*, 290 Mass. 335.    This court must decide the suit upon the report in accordance with its own judgment. *Cohen* v. *Silver*, 277 Mass. 230.

The master found that the plaintiff, a corporation organized in 1932 under the laws of Rhode Island, has,

since that date, conducted a store on Main Street in Worcester for the sale of fruit, groceries, vegetables, canned goods and provisions. During most of the time it used the name "United Fruit Stores" in its newspaper advertising and in its signs affixed to various parts of its premises. Its store has grown from a small beginning to one which now has a frontage of one hundred sixty-three feet on Main Street with a depth of seventy-five feet, and with a parking space for its customers' automobiles occupying a frontage of about sixty feet adjacent to Main Street, and leading to a parking space adjacent to Murray Avenue in the rear of the store. It does a large volume of business, which is entirely on a cash and carry basis, and employs one hundred thirty-two persons. On March 24, 1933, it filed a certificate in the office of the city clerk of Worcester to the effect that it was doing business at its Main Street location under the name or designation of "United Fruit Stores." (See G. L. [Ter. Ed.] c. 110, § 5.) On November 18, 1936, it filed a similar certificate of doing business under the name or designation of "United Public Markets." In June, 1936, it began and has continued to sell at its store a great variety of canned goods, each can being labelled in large type with the brand of the goods and also in smaller letters with the words "United Public Markets." From June, 1936, to the present time, it has operated between Providence, Rhode Island, and Worcester five large trucks which bear conspicuously the words "United Public Markets." In September, 1936, it placed at the Main Street entrance to its parking space, and now maintains, a Neon sign six feet square which reads: "Drive in — Free Parking to Customers of United Public Markets." At the same time it also placed an identical sign at the Murray Avenue entrance to the parking space, and since September, 1936, it has maintained two conspicuous wooden signs at the parking space bearing similar words. For four months prior to the filing of this bill it maintained a sign about fifteen inches high, which reads "United Public Markets," in one of its Main Street show windows and also two conspicuous signs in the form of seals, which read "United Public Markets,"

on the sides of its Main Street entrance. Ever since the summer of 1936, it has used, from time to time in its store, paper signs one foot high, changed occasionally in wording but including the words "United Public Markets." In popular parlance its store has always been and still is referred to frequently as "the United." Three old awnings projecting over the Main Street sidewalk in front of the store now bear the words "United Fruit Stores." The Worcester City Directory, published early in 1937, lists "United Fruit Stores" in the main body of its publication and also in that part entitled "Worcester Business Finder" under the heading "Fruit Dealers — Retail." A similar listing appears in the Worcester District Telephone Directory dated March, 1937. Neither the city nor telephone directory contains any listing of "United Public Markets" or "United Markets."

On or about April 30, 1937, the defendant opened a store on the same side of Main Street as the plaintiff's store is located and about three tenths of a mile south. The defendant deals in merchandise which is similar in character and variety to that which the plaintiff sells. On March 9, 1937, the defendant filed a certificate in the office of the city clerk of Worcester to the effect that he was doing business under the name or designation of "United Markets." About March 10, 1937, he ordered a Neon illuminated sign for his store bearing the name "United Markets," and this sign was installed about April 15, 1937. Shortly after March 29, 1937, the defendant placed a paper sign in the window of his store which read, "United Markets will be opened soon." His store is on a corner and has a frontage of nineteen feet on Main Street and a depth of forty feet. He works there and employs two clerks.

Up to April 15, 1937, the plaintiff advertised extensively in Worcester newspapers under the style of "United Fruit Stores." On April 16, 1937, it had an advertisement in a Worcester newspaper which read in part as follows: "Attention! Attention! Attention! Customers and Friends. The United Fruit Stores; (the thrift food store of Worcester) that has served and saved money for thousands of

satisfied customers for over seven years, changes its name to United Public Markets. . . . Remember The Same Store, Remember The Same Location But A New Name United Public Markets." This advertisement carried as its largest display the word "United." It also contained in less conspicuous type the following "United Fruit Stores — Worcester's finest market, 662–674 Main St."

Since the display of signs at the defendant's store reading "United Markets" there have been various known instances of confusion on the part of the public between the business of the defendant and that of the plaintiff. The master gives instances of misdelivery of mail and merchandise. Some six customers of the plaintiff have inquired whether it was opening a branch store at the defendant's location. The word "United" is in common use in Worcester and elsewhere as the first word of the name of many corporations and of many trade names used by partnerships and individuals, but there is no other market in Worcester using that word as a part of its name.

The master concludes: "I find that the names 'United Public Markets' and 'United Markets' are sufficiently similar to create confusion in the minds of the public. I find that before the defendant had published or chosen a name for his store, the plaintiff had for nearly five years built up a valuable good-will of business and had established a familiarity on the part of the public with the name 'United' as applied to a market; that the plaintiff had for several months used the name 'United Public Markets' on conspicuous signs in and about its premises; and that while the plaintiff was during that period and is at the present time in a transition stage in the use of the names 'United Fruit Stores' and 'United Public Markets' it has produced such a familiarity on the part of the public with the latter name that the use of the name 'United Markets' by the defendant is calculated to induce the public to trade with the defendant under the belief that it is trading with the plaintiff."

The defendant filed the following objections to the master's report: "1. Because the master fails to specifically find

that the trade name of the plaintiff, if it had acquired one prior to April 1, 1937 (when the defendant began using the name 'United Markets') was 'United Fruit Stores,' and not 'United Public Markets' as shown by the master's findings. 2. Because the master's findings that 'the names "United Public Markets" and "United Markets" are sufficiently similar to create confusion in the minds of the public' is entirely immaterial, and should be stricken from the report, in view of the master's other findings which show that the plaintiff prior to April 1937 had not acquired the trade name of 'United Public Markets.' 3. Because the master has failed to make any finding whatever upon the question of whether 'United Fruit Stores' and 'United Markets' are sufficiently similar to create confusion, which is the vital issue in the case, inasmuch as the master's findings show that prior to April 1937 the trade name of the plaintiff, if it had acquired one, was 'United Fruit Stores,' and not 'United Public Markets.' 4. Because the finding of the master in the last paragraph of the report viz.: that the plaintiff 'has produced such a familiarity on the part of the public with the latter name (United Public Markets) that the use of the name "United Markets" by the defendant is calculated to induce the public to trade with the defendant under the belief that it is trading with the plaintiff,' is not justified in view of the master's other findings."

By the terms of the interlocutory decree "the defendant's objections to the master's report No. 1 to 4 inclusive are sustained and except as so modified the master's report is confirmed."

The governing principles of law have frequently been stated and there is no occasion to repeat them. See *American Waltham Watch Co.* v. *United States Watch Co.* 173 Mass. 85; *Viano* v. *Baccigalupo,* 183 Mass. 160; *Regis* v. *H. A. Jaynes & Co.* 185 Mass. 458; *S. C.* 191 Mass. 245; *Cohen* v. *Nagle,* 190 Mass. 4; *George G. Fox Co.* v. *Glynn,* 191 Mass. 344; *Giragosian* v. *Chutjian,* 194 Mass. 504; *Reading Stove Works, Orr, Painter & Co.* v. *S. M. Howes Co.* 201 Mass. 437; *C A. Briggs Co.* v. *National Wafer Co.* 215 Mass. 100; *Kaufman* v. *Kaufman,* 223 Mass. 104; *Hub Dress Manuf. Co.* v.

*Rottenberg,* 237 Mass. 281; *Summerfield Co. of Boston* v. *Prime Furniture Co.* 242 Mass. 149; *Highland Dye Works, Inc.* v. *Anteblian,* 270 Mass. 209; *Jenney Manuf. Co.* v. *Leader Filling Stations Corp.* 291 Mass. 394. See also *Thomson* v. *Winchester,* 19 Pick. 214; *Weener* v. *Brayton,* 152 Mass. 101. In the case of *Samuels* v. *Spitzer,* 177 Mass. 226, 227, the court said: "In establishing a new business the defendant had no occasion to adopt a name which would be likely to mislead the public and induce them to believe that the business which he was establishing was conducted by the plaintiffs. It was easy to choose a satisfactory name unlike the plaintiffs', and to conduct the business in such a way as to leave the plaintiffs the whole benefit of such reputation as they had gained in the community." We think that on this record the plaintiff is entitled to relief and that it was error to sustain the defendant's exceptions to the master's report and to dismiss the bill. The result is that the interlocutory and final decrees must be reversed. An interlocutory decree is to be entered overruling the defendant's exceptions to the report and confirming the report. A final decree is to be entered enjoining the defendant from using the name United Markets in the city of Worcester and from advertising or exhibiting signs bearing the name United Markets at his store number 796–A Main Street in the city of Worcester, with costs to the plaintiff.

*Ordered accordingly.*