JAYS INC. *vs.* JAY-ORIGINALS INC.

Suffolk.     October 9, 1947. — November 5, 1947.

Present: QUA, C.J., LUMMUS, RONAN, & SPALDING, JJ.

*Unlawful Interference.     Unfair Competition.     Trade Name.*

In a suit in equity by a corporation called "Jays," engaged for many years in the sale at retail of women's wearing apparel, including sportswear, and using the word "Jays" or "Jay" in its name, in its advertising and otherwise to such an extent that that word had acquired a secondary meaning as descriptive of the plaintiff and its goods and business, against a recently formed corporation called "Jay-Originals," engaged in manufacturing junior sizes of women's sportswear which, marked with a label bearing the defendant's name, were sold by the defendant to retailers and were sold by them in competition with goods sold by the plaintiff, the plaintiff was entitled at common law to an injunction against the defendant's using the name "Jay-Originals,"

or any name employing the word "Jay" or "Jays," in connection with its business or the sale of its merchandise: there was a reasonable likelihood of ultimate purchasers being led to confuse the defendant's goods with the plaintiff's goods, even though the retailers who were the defendant's immediate customers would not be misled.

BILL IN EQUITY, filed in the Superior Court on June 27, 1946.

The suit was heard by *Williams,* J.

*H. B. Ehrmann,* for the plaintiff.

*I. M. Libman,* for the defendant.

SPALDING, J.   The plaintiff brings this bill to enjoin the defendant from using the name "Jay-Originals Boston" or any similar name in connection with its business.   The bill seeks relief on the ground of unfair competition and under the provisions of G. L. (Ter. Ed.) c. 155, § 9, as appearing in St. 1943, c. 295.   But the latter ground is not now relied on.   From a decree dismissing the bill, the plaintiff appealed.   The evidence is not reported, but the judge made a report of the material facts found by him.   G. L. (Ter. Ed.) c. 214, § 23.   The question to be decided is whether the facts found support the decree, "from the entry of which no fact not expressly found may be implied."   *Carilli Construction Co.* v. *John Basile & Co. Inc.* 317 Mass. 726, 727.

The report contained the following: The plaintiff has continuously, since the date of its incorporation in 1918, been engaged in the sale at retail in Boston of women's, misses' and juniors' wearing apparel, including sportswear. It is not a manufacturer.   The plaintiff has at great expense advertised its business in Boston and throughout the Commonwealth, and also in magazines of national circulation.   In all of this advertising it has used the name "Jays," which it acquired from its founder Jay Abrams.   The plaintiff has also used this name on its circulars, stationery, boxes, price tags, and labels.   By such advertising and use the name "Jays" or "Jay" throughout New England and New York, and in other sections of the United States, has become so associated with the plaintiff's business as to acquire a secondary meaning as descriptive of the plaintiff,

its business and the merchandise sold by it, and the plaintiff has thus acquired a valuable property right in the name.

The defendant is a Massachusetts corporation which was organized in August, 1943, by Jacob Donath and Hyman Isenberg. At that time Donath and Isenberg knew that the plaintiff was conducting a shop on Temple Place specializing in women's wearing apparel, and that "Jays" commonly meant that store. Donath had been in the "women's wear business" for approximately eighteen years. During that period he had been employed by various concerns as a designer, salesman, and adviser on styles. "He was well known in New England and the eastern part of New York by buyers and owners. They knew him as 'Jay.'" When the defendant was formed in 1943 the name "Jay-Originals Inc." was adopted. It is engaged exclusively in manufacturing junior sizes of women's sportswear. The manufacturing is done in Brockton but its business office is in Boston. The defendant sells its product to many of the well known retail stores in Boston and in other cities and towns. Its goods are marked with a label stating the name of the corporation.[1] The defendant does its advertising through the same media as the plaintiff uses.

At about the time this suit was commenced, merchandise manufactured by the defendant and similar in style to that sold by the plaintiff appeared in the stock of certain well known retail stores in Boston and New York. "Doubtless, the defendant's goods are sold in many other stores in localities where sales would be in competition with those sold by the plaintiff." The business of the defendant has steadily increased.

Two or three letters directed to the defendant at the plaintiff's address were delivered to the plaintiff.

After stating that "there was no evidence that from 1943 to date the plaintiff has been actually injured by the use of the defendant of its name in connection with its advertising

---

[1] The judge annexed to his report of material facts labels and price tags used by the plaintiff and the defendant. Those used by the defendant are not similar in appearance or design to the plaintiff's.

or sale of goods," the judge concluded that he was "unable to find from a comparison of the respective names of the parties that any reasonable likelihood of injury exists as to the future."

We are of opinion that on this record the plaintiff was entitled to relief and that the decree dismissing the bill was erroneous. The governing principles of law are now well established in this Commonwealth and no useful purpose would be served in restating them. See *American Waltham Watch Co.* v. *United States Watch Co.* 173 Mass. 85; *Summerfield Co. of Boston* v. *Prime Furniture Co.* 242 Mass. 149; *General Fruit Stores, Inc.* v. *Markarian,* 300 Mass. 90, 94–95, and cases collected; *Blair's Foodland Inc.* v. *Shuman's Foodland, Inc.* 311 Mass. 172; *Cain's Lobster House, Inc.* v. *Cain,* 312 Mass. 512; *Staples Coal Co.* v. *City Fuel Co.* 316 Mass. 503; *265 Tremont Street, Inc.* v. *Hamilburg, ante,* 353; *Healer* v. *Bloomberg Bros. Inc., ante,* 476. Under the principles set forth in these cases the plaintiff is entitled to relief if it can be said that there is a reasonable probability that the public will be induced to purchase goods manufactured by the defendant in the belief that they are those of the plaintiff. Proof of actual deception of the public is not required. It is enough if a reasonable probability of such deception exists. *Reading Stove Works, Orr, Painter & Co.* v. *S. M. Howes Co.* 201 Mass. 437, 440. *Norton* v. *Chioda,* 317 Mass. 446, 451. Restatement: Torts, § 728 and comments.

It cannot be said here, we think, that the name adopted by the defendant was so unlike the plaintiff's that there was no reasonable likelihood that the public would be misled. *General Fruit Stores, Inc.* v. *Markarian,* 300 Mass. 90. *Blair's Foodland Inc.* v. *Shuman's Foodland, Inc.* 311 Mass. 172. *Healer* v. *Bloomberg Bros. Inc., ante,* 476. See *Samuels* v. *Spitzer,* 177 Mass. 226. See also Nims, Law of Unfair Competition & Trade Marks (3d ed.) § 54. If there is doubt whether confusion will result, then it should be resolved in favor of the plaintiff. It is to be noted that the name "Jay" is not the real name of anyone connected with the defendant corporation but was a name arbitrarily

chosen.  See *Jays Inc.* v. *Purcell*, 313 Mass. 127, 128.  It is true that Donath, one of the organizers of the defendant, was well known in the trade as "Jay," but that did not justify the appropriation by the defendant of an essential part of the plaintiff's name.  If Donath's name was so favorably known in the trade that its use in connection with the defendant's business was considered desirable, it would have been easy to make use of it in such a way as would leave to the plaintiff the whole benefit of such reputation as it had built up in the community.  See *Samuels* v. *Spitzer*, 177 Mass. 226, 227.  The following statement by Judge Learned Hand in *Lambert Pharmacal Co.* v. *Bolton Chemical Corp.* 219 Fed. 325, is apposite here:  "In choosing an arbitrary trade-name, there was no reason whatever why . . . [the defendant] should have selected one which bore so much resemblance to the plaintiff's; and in such cases any possible doubt of the likelihood of damage should be resolved in favor of the plaintiff.  Of course, the burden of proof always rests upon the moving party, but having shown the adoption of a similar trade name, arbitrary in character, I cannot see why speculation as to the chance that it will cause confusion should be at the expense of the man first in the field.  He has the right to insist that others in making up their arbitrary names should so certainly keep away from his customers as to raise no question" (page 326).

The fact that the plaintiff is a retailer whereas the defendant is a manufacturer is not fatal to the plaintiff's case.  Very likely the defendant's immediate purchasers, the jobbers and retailers, would not be misled as to the source of the goods that they were buying.  But it is immaterial that the initial purchasers are not misled if the remote purchasers are likely to be.  See Restatement: Torts, § 712, comment e, and § 728, comment d.  The case of *Libby, McNeill & Libby* v. *Libby*, 241 Mass. 239, relied on by the defendant, is not to the contrary.  In that case there was no likelihood that either initial or subsequent purchasers would be misled.  The plaintiff should not be required to sit by until the defendant's goods reach the hands of retailers and then pro-

ceed against them; it can invoke the aid of a court of equity to stop the unfair practice in limine.

In holding that the plaintiff is entitled to relief, we do not rely on G. L. (Ter. Ed.) c. 110; § 7A, as inserted by St. 1947, c. 307,[1] which was not enacted until after the decision in the court below. There is therefore no occasion to consider the contention of the plaintiff that, in the event that it was not entitled to prevail at common law, we should decide the case under the statute. See *265 Tremont Street, Inc.* v. *Hamilburg, ante*, 353, 357.

It follows that the decree dismissing the bill is reversed and a new decree is to be entered enjoining the defendant from using the name "Jay-Originals Boston," or any name employing the word "Jay" or "Jays," in connection with its business or the sale of its merchandise. The plaintiff is to have costs of this appeal.

*So ordered.*

---

[1] This statute was approved May 2, 1947, and reads: "Likelihood of injury to business reputation or of dilution of the distinctive quality of a trade name or trade-mark shall be a ground for injunctive relief in cases of trade-mark infringement or unfair competition notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services."