MONROE STATIONERS AND PRINTERS, INC. *vs.* MUNROE
STATIONERS, INC.

Suffolk.    November 29, 1954. — February 15, 1955.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Unfair Competition.    Unlawful Interference.    Trade Name.*

The proprietor of a wholesale stationery and office supply business, con-
ducted under a name which had acquired a secondary meaning in the
trade as indicating that business and having some customers in a
nearby city where a retail stationery and office supply store was
started under a substantially identical name by one whose representa-
tive spent considerable time outside the store soliciting orders, was
entitled in equity to have the proprietor of the retail store enjoined
from using the name in such a manner as to create confusion of the
two businesses in the trade.

BILL IN EQUITY, filed in the Superior Court on December
10, 1953.

The suit was heard by *Morton*, J.

In this court the case was submitted on briefs.

*Alfred Sigel*, for the defendant.

*Benjamin Rudner*, for the plaintiff.

RONAN, J.    This bill in equity seeks to enjoin the de-
fendant from assuming in the conduct of its business a
corporate name so similar to that of the plaintiff "as to
be likely to be mistaken for it.". G. L. (Ter. Ed.) c. 155,
§ 9, as amended by St. 1953, c. 32.    The bill also seeks to
enjoin the defendant from using the name "Munroe Sta-
tioners, Inc.," in any manner calculated to lead the public
to believe that in dealing with the defendant they are deal-
ing with the plaintiff.    The judge made a report of the
material facts in which he stated that there was evidence
that the defendant has not received a charter, and that
there was an intimation, concerning which he made no
finding, that the charter was being withheld until the

termination of the instant case. It also appears from his report that the plaintiff had not fully pursued its remedy under G. L. (Ter. Ed.) c. 155, § 9, as amended, although there was a hearing of some kind, the evidence concerning which he states was too vague to justify a definite finding. The defendant appealed from a final decree omitting to grant any relief under said § 9 but enjoining the defendant from using the name "Munroe Stationers, Inc.," in various ways but principally in such a manner as to deceive and mislead the public into believing that in dealing with the defendant they were dealing with the plaintiff. We have a report of the material facts and a transcript of such portions of the evidence as the parties have designated in accordance with Rule 2 (B) of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 693.

The facts may be briefly summarized. One Frager and one Julius, as copartners, carried on the business of buying and selling stationery, office supplies, and equipment, and of furnishing such printing services as its customers required, under the name of Monroe Stationers and Printers, from 1947 to 1952 when they organized the plaintiff corporation which has since continued the business. The plaintiff has customers in various parts of the Commonwealth. It has two or three customers in Lynn. It secures its business almost entirely through salesmen. Frager spends nearly all his time in travelling and soliciting trade. The firm's, and subsequently the corporation's, place of business is located on the street and second floors of a building on India Wharf in Boston. It has no retail store and does not cater to transient trade. The plaintiff has spent considerable sums in advertising under its corporate name of Monroe Stationers and Printers, Inc., and those of the public with whom the plaintiff does business know it as "Monroe Stationers." The plaintiff's business is conducted upon a wholesale basis.

One Belkin, who had been associated for twenty-four years with a firm engaged in the stationery and printing business, sixteen years in Lynn and eight years in Boston,

severed his connection with that firm and formed on October 8, 1953, the defendant, giving to it the name of "Munroe Stationers, Inc." Belkin knew of the existence of the plaintiff prior to the formation of his corporation. He testified that he adopted the name of the defendant because its store was located on Munroe Street in Lynn. The defendant conducts a store for the sale of stationery, office supplies, and blank forms. A small amount of printing is done for customers who order it but orders for printing are not encouraged. Belkin spends considerable time outside the store, primarily in Lynn but not in Boston, in soliciting business. The defendant has no customers in the latter city.

The judge found that the defendant adopted its corporate name in the hope of securing some of the plaintiff's business but that there was no evidence that this hope has been realized, and that the plaintiff is generally known as "Monroe Stationers" among the trade. There was evidence that there had already been some confusion in a few instances of vendors of goods between the plaintiff and the defendant. There is no one by the name of Monroe or Munroe connected with the defendant's business. The defendant is "more or less a retail outfit."

Under the common law of this Commonwealth one whose trade name has acquired a secondary meaning in the minds of the public as indicating the origin of his products or as identifying his goods known to them by a trade name has the right to have his trade name protected by securing an injunction to prevent another from using the same name or a name so similar as to mislead the public into buying the defendant's goods in the belief that they were buying those of the plaintiff and from palming off his goods as those of the plaintiff to the injury of the latter. *Jays Inc.* v. *Jay-Originals Inc.* 321 Mass. 737, 740, and cases cited. Where the plaintiff's name has acquired a secondary meaning as descriptive of the plaintiff it is not required to prove actual deception upon the part of the defendant, for it is enough if it appears from the similarity of names, the nature of the

business, the methods of wrappings, the contents of advertisements, and various other details employed by the defendant, that there is a reasonable probability that the public will be induced to deal with the defendant in the belief that they are dealing with the plaintiff. *Norton* v. *Chioda*, 317 Mass. 446, 451, and cases cited.

It would have been an easy matter for the defendant to have chosen a name unlike that of the plaintiff instead of one practically similar to that which had been adopted and continuously used by the plaintiff. *Blair's Foodland Inc.* v. *Shuman's Foodland, Inc.* 311 Mass. 172, 175. *Cain's Lobster House, Inc.* v. *Cain*, 312 Mass. 512, 514. The defendant contends that the finding of the judge, that the motive of the defendant in selecting its corporate name was to secure a part of the plaintiff's business, was plainly wrong. We need not consider this contention in view of the conclusion we reach. While it is true that the defendant's headquarters were a retail store in which printing was also done, we find that considerable time of Belkin, apparently the leading figure in the defendant organization, was spent outside of the store in soliciting orders for goods similar to those sold by the plaintiff.

Notwithstanding the contention of the defendant, the plaintiff is entitled to be protected against unfair competition in a locality where the plaintiff's name has acquired a secondary meaning as identifying the goods sold and the services furnished by it. The plaintiff does business in Lynn and no undue hardship is imposed upon the defendant by preventing it from continuing to do business there or in the various other places in which the plaintiff does business under a name that it is reasonably probable will tend to create confusion in the trade. Compare *Kaufman* v. *Kaufman*, 223 Mass. 104; *Staples Coal Co.* v. *City Fuel Co.* 316 Mass. 503, 511. Furthermore, as the judge has properly found that the plaintiff's name had acquired a secondary meaning among the trade, we need not decide in view of the conclusion we reach whether the plaintiff is also entitled to injunctive relief under G. L. (Ter. Ed.)

c. 110, § 7A, inserted by St. 1947, c. 307.[1]  A somewhat similar contention was answered in *Food Fair Stores, Inc.* v. *Food Fair, Inc.* 177 Fed. (2d) 177, 185, affirming a decree entered in 83 Fed. Sup. 445, where our statute was carefully analyzed and held applicable where the secondary meaning of the plaintiff's trade name was known principally to those who sold it supplies rather than to purchasers, although it planned to open but had never opened one of its chain stores in the Commonwealth.

*Decree affirmed with costs of the appeal.*

---

[1] "Likelihood of injury to business reputation or of dilution of the distinctive quality of a trade name or trade-mark shall be a ground for injunctive relief in cases of trade-mark infringement or unfair competition notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services."