HUNT POTATO CHIP CO. *vs.* PRICE E. HUNT.

Norfolk.    December 7, 1959. — February 8, 1960.

Present: WILKINS, C.J., SPALDING, COUNIHAN, WHITTEMORE, &
CUTTER, JJ.

*Unfair Competition.    Unlawful Interference.    Equity Pleading and Practice,* Decree, Suit to enjoin unfair competition.

A corporation named Hunt Potato Chip Co., which over a long period of time had built up a substantial business in the manufacture and sale of potato chips, whose name had acquired a secondary meaning as indicating its business, and which had labeled its packages "Hunt's Potato Chips" or "Hunt's," was entitled to appropriate relief in equity against one Hunt who entered the potato chip field considerably later than the corporation and used the names "The Hunt Potato Chip Co." and "Hunt's Potato Chips," deliberately labeled his packages so similarly to the corporation's labels as to mislead the public into buying his chips in the belief that they were purchasing the corporation's chips, and maintained a large sign over his place of business intentionally so worded as to mislead the public into believing that he was operating as a branch of the corporation's business.    [374]

In a suit in equity by a corporation called Hunt Potato Chip Co., and using the words "Hunt's Potato Chips" and "Hunt's" on its packages against one Hunt to enjoin unfair competition with the plaintiff in the sale and distribution of potato chips, a decree enjoining the defendant from "using the words 'Hunt and Hunt's' . . . either alone or in any combination of words, in connection with the sale . . . or distribution of potato chips" was too broad; this court ordered the decree modified by the trial court, after further hearing, by provisions which would allow the defendant the use of his name but ensure that his business would be so clearly differentiated from the plaintiff's business that for practical purposes deception would be eliminated.    [374–375]

Where, in a suit in equity by a corporation called Hunt Potato Chip Co., and having its place of business in Braintree against one Hunt to enjoin unfair competition with the plaintiff, it appeared that the defendant had his only place of business in Worcester and had placed on the roof of his building a large sign visible for a considerable distance inscribed "The Hunt Potato Chip Co. Worcester Branch," with "deliberate intent to mislead the buying public into believing that . . . [he] was in fact operating as a branch of the well established business of the plaintiff," there was no error in a provision of the final decree enjoining the defendant from using the words "Worcester Branch" on or in connection with his place of business.    [375]

BILL IN EQUITY, filed in the Superior Court on October 22, 1957.

The suit was heard by *Bolster, J.*, on a master's report.

*Morris Newman*, for the defendant.

*Edward H. Libertine*, for the plaintiff.

SPALDING, J. The objective of this suit is to enjoin the defendant's alleged unfair competition.

The master, to whom the case was referred, found these facts. The plaintiff, Hunt Potato Chip Co., is a Massachusetts corporation which was organized in 1921. Since that time it has been engaged in the manufacture and distribution of potato chips; its place of business is in Braintree. The plaintiff has a very substantial business and the area in which its product is sold includes "all Greater Boston, Cambridge, Everett and many other cities immediately surrounding Boston as well as the entire Cape Cod and South Shore area." The plaintiff's business activities west of Boston extend to Framingham.

The defendant, Price E. Hunt, is engaged in the business of selling potato chips, bacon rinds, and popcorn. His place of business is in Worcester. The defendant started in the bacon rind business about twelve years ago, and six months later extended his business to include potato chips. Six months after he entered the potato chip field the defendant commenced doing business in Boston. "[A]t that time he had become acquainted with the fact that the plaintiff Hunt Potato Chip Co. was operating a business in the greater Boston area." A year later the defendant started to use the names "The Hunt Potato Chip Co." and "Hunt's Potato Chips." He sells his potato chips "in Boston, Springfield, Worcester, Cambridge and a large number of smaller municipalities in Massachusetts, as well as in Providence, . . . New Haven and Hartford . . . ." The defendant's trucks bear the sign "Hunt's Potato Chips." The defendant markets his potato chips in bags of four sizes: a five cent, a ten cent, a twenty-five cent and a sixty-nine cent size. The ten cent package, the design of which was registered, contained "P.E." in letters ¼ inch in size.

These letters were followed by "Hunt's" in lettering 5/8 of an inch in size. On the twenty-five cent package the word "Hunt's" appears in lettering eight times larger than the letters "P.E." just above it. On the defendant's sixty-nine cent package there appear the words "Hunt's Giant Bag," and there was nothing on the package to indicate where or by whom it was manufactured or sold.

The plaintiff's package contains the words "Hunt's Potato Chips" and also the word "Hunt's" standing alone. The color of the plaintiff's package is somewhat similar to that of the defendant.

On the roof of the defendant's place of business in Worcester is a large sign visible for a considerable distance, bearing the legend: The Hunt Potato Chip Co. Worcester Branch. In fact it was not a branch at all but the only place in which the defendant conducted his potato chip business.

Three store proprietors bought the defendant's product under the mistaken belief that they were dealing with the plaintiff. Numerous telephone calls complaining of non-delivery of merchandise have been received by the plaintiff from the customers of the defendant who were confused by the similarity of names. On one occasion the plaintiff received a letter from an attorney stating that his client had become ill as a result of eating the plaintiff's chips, whereas in fact the chips were the defendant's.

After finding the foregoing facts, the master concluded that the packaging and labeling of the defendant's product was sufficiently similar to that of the plaintiff as to mislead and confuse the public into buying the defendant's chips in the belief that they were purchasing the plaintiff's; that by the use of the name "Hunt Potato Chip Co." on his product, and by the use of the word "Hunt's" on his twenty-five cent package with initials P.E. over the H in much smaller letters, the defendant deliberately tried to mislead the purchasing public into believing that his product was that of the plaintiff; and that the defendant by maintaining the sign "The Hunt Potato Chip Co. Worcester Branch" on his place of business "had a deliberate intent to mislead the buying

public into believing that the defendant was in fact operating as a branch of the well established business of the plaintiff."

On the basis of the master's report a decree was entered enjoining the defendant from "using the words 'Hunt and Hunt's' . . . either alone or in any combination of words, in connection with the sale . . . or distribution of potato chips within a radius of twenty-five . . . miles of the State House . . . and . . . within the counties of Plymouth and Barnstable." The decree further enjoined the defendant from using the words "Worcester Branch" on or in connection with his place of business. The defendant appealed.

That the plaintiff on the foregoing facts is entitled to relief can hardly be doubted. The governing principles of law are so familiar that they need not be restated. See *Cain's Lobster House, Inc.* v. *Cain,* 312 Mass. 512; *Staples Coal Co.* v. *City Fuel Co.* 316 Mass. 503, 507; *S. M. Spencer Mfg. Co.* v. *Spencer,* 319 Mass. 331, 337, and cases cited; *Jays Inc.* v. *Jay-Originals Inc.* 321 Mass. 737; *Monroe Stationers & Printers, Inc.* v. *Munroe Stationers, Inc.* 332 Mass. 278. Although the master did not expressly state that the plaintiff's trade name had acquired a secondary meaning, we are of opinion that such a conclusion is implicit in his findings. He found that the plaintiff over a long period of time had built up a very substantial business in potato chips and that the defendant's conduct has "caused a dilution of the distinctive quality of the trade name of the plaintiff." Proof that there is a reasonable probability that the public will be deceived is all that law requires. *Jays Inc.* v. *Jay-Originals Inc.* 321 Mass. 737, 740. Here the facts showed both a reasonable probability of deception and actual deception.

We are of opinion, however, as the defendant urges, that the relief granted was too broad in prohibiting the defendant from using the name "Hunt" or "Hunt's" in connection with his business. There may be situations where, in order to prevent deception, courts will extend the protection of a trade name to the point of the absolute prohibition of the use of the defendant's own personal name as a part of his

business or trade name. But "[c]ourts are naturally reluctant wholly to forbid a man to do business in his own name and have generally refused to do so. They have, however, insisted that he take whatever precautions the circumstances require to prevent deception and to insure that the use of his own name should not be fraudulent as to those who have previously acquired rights in the same name." *S. M. Spencer Mfg. Co.* v. *Spencer,* 319 Mass. 331, 337–338, and cases there collected.

We are of opinion that the present case is not one which requires an absolute prohibition of the defendant's use of his own name. We prefer to leave the details of the decree to the trial judge. In general, provisions of the decree should so clearly differentiate the defendant's business from the plaintiff's business that for practical purposes deception will be eliminated. Possibly the type of decree outlined in the *Spencer* case at page 338 may serve as a guide. And, to paraphrase a statement in that case, "The . . . [defendant] must decide whether . . . [he prefers] to abandon the use of the name . . . [Hunt] altogether or to use it under the restrictions imposed." (P. 338.)

The defendant complains that the decree was likewise too broad in enjoining him from using the words "Worcester Branch" in connection with his place of business. Inasmuch as these words are contrary to fact and were employed with deliberate intent to mislead and deceive the public, the defendant is in no position to complain of their elimination. The retention of these words can do the defendant no legitimate good and might do the plaintiff some harm.

The suggestion that the plaintiff is barred by laches is without merit. Laches was not pleaded and the master made no findings on the issue. The defendant is seeking to raise here for the first time an issue not presented below and concerning which we are in no position to decide.

The interlocutory decree confirming the master's report is affirmed. The final decree is to be modified as outlined in this opinion upon further hearing in the Superior Court, and, as modified, is affirmed.                    *So ordered.*