THE GREAT SCOTT FOOD MARKET, INC. *vs.* SUNDERLAND
WONDER INC.

Worcester.    November 6, 1964. — January 5, 1965.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Unlawful Interference.    Unfair Competition.    Trade Name.    Trade Mark.*

Evidence supported a finding that a trade name adopted for a group of
food stores and intensively advertised in the area of the group over
several months in connection with a discount merchandising technique
used in the stores had acquired a secondary meaning as referring to the
stores.    [323–324]

Uniqueness of a trade name is not a prerequisite to granting relief to the
proprietor of the name under G. L. c. 110, § 7A, against use of a closely
similar name by another.    [324]

The proprietor of a group of food stores operated and advertised in a
certain trading area under a registered trade name which had acquired
a secondary meaning as referring to such stores was entitled in a suit
in equity to injunctive relief under G. L. c. 110, § 7A, against subse-
quent use by the defendant of the distinctive words of the plaintiff's
trade name in a closely similar name in connection with food stores of
the defendant operated in a different trading area a substantial distance
away from the trading area of the plaintiff's stores.    [324–325]

BILL IN EQUITY filed in the Superior Court on October 17,
1963.

The defendant appealed from the final decree entered
after hearing by *Meagher, J.*

*Calvin C. Gould* (*William J. LeDoux* with him) for the
defendant.

*Harry Zarrow* for the plaintiff.

REARDON, J.    This bill in equity brought by The Great
Scott Food Market, Inc. (Great Scott), seeks to enjoin the
defendant from using the name "The Big G" in connection
with any store or business within the Commonwealth of
Massachusetts.    The plaintiff is a Rhode Island corporation
which first engaged in the retailing of food sometime in the
late 1930s, doing business under the name of "Great Scott
Food Markets."    A Massachusetts corporation was formed

several years ago and an additional store was operated in Fall River under the same name. Early in May of 1963, Great Scott began to convert its stores in Rhode Island to a discount method of operation.[1] As each store was converted, at three to four week intervals, it was named a "Big G Discount Food Store." On June 3, 1963, the plaintiff registered the trade mark "The Big G Discount Food Stores" in Massachusetts under G. L. c. 110, § 8, and a certification of registration was issued to it. In October, 1963, a seventh Rhode Island store was acquired (in Pawtucket) and was opened as a "Big G" supermarket. On November 6, 1963, the Fall River store was also converted to a discount operation under the name "Big G." Continued expansion of the chain in Rhode Island, as well as construction of an additional store at Seekonk, Massachusetts, was in immediate prospect. For some time prior to trial consideration had been given to expansion into the Worcester area, but no negotiations for a specific site had been undertaken.

Accompanying the plaintiff's change in trade name was a transformation in merchandising technique to an "everyday low price concept" whereby every item in the store was discounted for sale. An intensive advertising campaign to promote "Big G" was begun through the newspaper and radio media contemporaneous with the store conversions.[2] There was extensive use of billboards in the greater Providence area. Numerous trade journals carried articles on the plaintiff's "Big G" stores which, according to the plaintiff's treasurer, have been "extremely successful," the dollar volume in sales having tripled.

The defendant, Sunderland Wonder Inc. (Sunderland), is a family-owned complex of five supermarkets operating in the Worcester area. On or about September 10, 1963, the largest of Sunderland's markets, all of which had been

[1] These stores were located (in the order of their conversion) in Pawtucket, Warwick, Wickford, Cranston, North Providence and Providence.

[2] Advertising outlets employed included the radio stations and newspapers of Providence, Pawtucket and Fall River, as well as a newspaper in Attleboro.

operated under the name "Wonder Markets," adopted the name "Big 'G' Discount Foods" and advertised "Across-the-Board Food Discounting" in a Worcester newspaper. Officers of the defendant knew of the Rhode Island "Big G" chain and had visited the Warwick store prior to the opening of the defendant's "Big 'G.' " The exhibits show close similarity between the plaintiff's and defendant's trade names and newspaper advertising.[3]

The distance between that store of the plaintiff's in Rhode Island nearest to Worcester and the defendant's "Big 'G' " store is approximately twenty-five miles. A specialist in marketing, testifying for the defendant as an expert, stated that the "trading area" of a typical discount food store in New England is no more than six miles; that no more than ten or fifteen per cent of such business would come from beyond such a radius; and that no more than five per cent would come from twenty miles away.

On September 10, 1963, the plaintiff's attorney served notice on the defendant, by certified mail, to discontinue the use of the name "Big G." On October 17, this suit was instituted alleging unfair competition under G. L. c. 110, § 7A, inserted by St. 1947, c. 307.

The court found that the name "Big G" "has become associated by the general public with the plaintiff and has acquired a secondary meaning which is a valuable asset of the plaintiff's business"; that the defendant "has wrongfully assumed and appropriated the trade name 'Big G' for the purpose of appropriating for its own profit the reputation, good will and value connected with the plaintiff's trade name"; and that the defendant's use of the name "Big G" has injured and will injure the plaintiff's business reputation and will cause "dilution of the distinctive quality of the plaintiff's registered trade name and mark."

---

[3] The plaintiff advertised as "The Big G Discount Food Stores," the defendant as "Big 'G' Discount Foods." In each case the name is contained within an ellipse differing only in that the plaintiff's is flat at either end while the defendant's is curved. The plaintiff's advertisements are black and white while the defendant has employed black, white, blue and yellow. The plaintiff's advertising is predominantly "conventional" (items and prices are advertised). The defendant employs only "institutional" advertising (prices are not designated).

The defendant has appealed from a final decree enjoining it "from using the name 'Big G' in any form or combination similar to the mark as registered by the plaintiff in connection with any food store within the County of Worcester, Commonwealth of Massachusetts." The evidence is reported.

1. The plaintiff bases its claim to relief on G. L. c. 110, § 7A, inserted by St. 1947, c. 307, which provides: "Likelihood of injury to business reputation or of dilution of the distinctive quality of a trade name or trade-mark shall be a ground for injunctive relief in cases of trade-mark infringement or unfair competition notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services." Under the principles stated in *Jays Inc.* v. *Jay-Originals Inc.* 321 Mass. 737, 740, and cases cited, we are of opinion that the plaintiff might in this instance be entitled to relief without reference to the statute. We note also, but express no view on, the possible applicability of the doctrine of reasonably expectable expansion of business. See Restatement 2d: Torts (Tent. draft No. 8, April 22, 1963), § 732. Since some question is present as to whether the defendant is or is likely to become a business rival of the plaintiff (see *Skil Corp.* v. *Barnet,* 337 Mass. 485, 488), we conclude that the disposition of this case calls for application of the statute and that the plaintiff, falling within its express terms, is entitled to the relief granted by the trial court.

2. The defendant urges that the plaintiff has not shown the acquisition of secondary meaning in its Rhode Island trading area and that, therefore, no secondary meaning had been acquired in the defendant's trading area. Without expression of opinion as to whether we agree with the defendant in its contention that proof of a secondary meaning is requisite in order to gain relief under the statute (see *Mann* v. *Parkway Motor Sales Inc.* 324 Mass. 151, 157), we are satisfied that in this case such proof existed. We cannot disagree with the judge's finding that the plaintiff had acquired secondary meaning in the name "Big G." The

fact that its business tripled in dollar volume sales shortly after the conversions is indicative of the success of its discount merchandising techniques and the impact of its name and style upon the public. That this took place in less than six months, although a factor to be considered, does not lead to a necessary finding of no secondary meaning. Nims, Unfair Competition and Trade-Marks (4th ed.) § 38a. Where a promotional scheme such as that adopted by the plaintiff is initiated, the words which accompany it can achieve widespread repute within a brief period of time.

3. The defendant's contention that the name "Big G" is not sufficiently unique to warrant protection is without merit. "[A] trade name is not to be resolved into its component parts, and each part analyzed separately in cases of this sort." *Food Fair Stores, Inc.* v. *Food Fair; Inc.* 177 F. 2d 177, 185 (1st Cir.), affirming 83 F. Supp. 445 (D. Mass.). That relief under the statute is not dependent on uniqueness of name is supported by the statutory history of § 7A. See *Skil Corp.* v. *Barnet,* 337 Mass. 485, 489, n. 1.

4. The defendant challenges the finding that its use of "Big G" has caused and will cause injury to the plaintiff's business reputation and dilution of its trade name. Although the plaintiff operated no stores within the Worcester trading area, the defendant's appropriation of the name "Big G"[4] endangered the plaintiff's reputation and good will. See *Monroe Stationers & Printers, Inc.* v. *Munroe Stationers, Inc.* 332 Mass. 278, 280. There was testimony that people from Worcester traveled through the Providence area. It is not improbable that they became acquainted with the name "Big G" and knew of the plaintiff's method of doing business and that upon their return to Worcester they would see the defendant's store and shop there in the belief that it was one of the plaintiff's stores.

---

[4] The defendant seeks to attach its use of the name "Big G" to the name "Gould," which is the surname of the defendant owners, but that attachment is predicated on a "free ride on a vehicle paid for and built by the plaintiff." See *Ronson Art Metal Works, Inc.* v. *Fink,* 70 N. Y. S. 2d 196, 199. See also *Jays Inc.* v. *Jay-Originals Inc.* 321 Mass. 737, 740–741, where the fact that one of the defendant's organizers was known in the trade as "Jay" was held not to justify use of the name as a trade name detrimental to the plaintiff.

See Restatement: Torts, § 732, comment a. The statute upon which the plaintiff relies has expressly withdrawn "competition between the parties" and "confusion as to the source of goods or services" as prerequisites to injunctive relief. Indeed "[t]he gravamen of a dilution complaint is that the continuous use of a mark similar to plaintiff's works an inexorably adverse effect upon the distinctiveness of the plaintiff's mark . . . . This injury differs materially from that arising out of the orthodox confusion." Callmann, The Law of Unfair Competition and Trade-Marks (2d ed.) § 84.2, p. 1643. Cf. *Polaroid Corp.* v. *Polaroid, Inc.* 319 F. 2d 830 (7th Cir.), construing the Illinois antidilution statute.

5. Our view of the statute and the field to which it relates has been cogently expressed by Judge Learned Hand who, speaking in *Yale Elec. Corp.* v. *Robertson, Commr. of Patents,* 26 F. 2d 972, 974 (2d Cir.), said: "[I]t has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful."

We conclude that the plaintiff is entitled to relief and that any use by the defendant within Worcester County of the name "Big G" will endanger the plaintiff's business reputation and cause the distinctive quality of its trade name to be diluted.

*Decree affirmed with costs of*
*appeal to the plaintiff.*