MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY *vs.*
MASSACHUSETTS LIFE INSURANCE COMPANY.

Suffolk.   February 5, 1969. — June 26, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Unfair Competition. Name. Corporation,* Name. *Insurance,* Corporate
   name. *Equity Pleading and Practice,* Decree, Suit to enjoin unfair
   competition.

A long established, large, prosperous, and well known concern officially
   named Massachusetts Mutual Life Insurance Company but widely
   identified in the insurance industry and the public mind with the name
   Massachusetts Life Insurance Company was entitled under general
   equitable principles and also under G. L. c. 110, § 7A, to appropriate
   relief against unfair competition by a recently established concern
   named Massachusetts Life Insurance Company which, by the use of
   its name and the form of its policies, letterhead and advertising, had
   created likelihood of confusion of the two concerns. [294]
In a suit in equity by the Massachusetts Mutual Life Insurance Company
   against the Massachusetts Life Insurance Company to enjoin unfair
   competition by the defendant, this court ordered that a paragraph of
   the final decree permanently enjoining the defendant from using the
   word Massachusetts be struck out, that the case be heard further in
   the trial court relative to possible use of the word Massachusetts by
   the defendant in such a way as not to cause confusion of the two com-
   panies, and that thereafter a new paragraph be inserted in the decree
   or the original paragraph be reinstated therein. [296–297]

BILL IN EQUITY filed in the Superior Court on February 17,
1964.

The suit was heard by *Collins,* J.

*Andrew G. Meyer (Wendall J. Leary* with him) for the
defendant.

*Edward J. Duggan (Daniel J. Johnedis* with him) for the
plaintiff.

KIRK, J.   The plaintiff seeks by this bill in equity to en-
join the defendant from doing business under the name
"Massachusetts Life Insurance Company."   Relief is sought
under (a) general equitable principles, (b) G. L. c. 155, § 9,

and (c) G. L. c. 110, § 7A.  In an earlier opinion in the same case, 351 Mass. 283, 291, we held that the plaintiff could proceed on all three avenues of relief.  By counterclaim the defendant seeks to confirm the legality and propriety of its chosen corporate name and to enjoin the plaintiff from interference with its use of the name.  The case was tried before a judge, who filed a voluntary report of material facts and ordered the entry of a decree enjoining the defendant from continued use of the name "Massachusetts Life Insurance Company."  Pending the entry of the final decree the defendant took steps to change its name to "Massachusetts Life and Annuity Insurance Company."  The plaintiff thereupon moved to amend the order for decree.  The motion was allowed and the judge entered a final decree permanently enjoining the defendant from using in its corporate name the word "Massachusetts," and dismissing the defendant's counterclaim.  The defendant appeals from the final decree.  In addition to the judge's voluntary report of material facts, we have a transcript of testimony and all the exhibits which the parties agree are material to the issues in the case.  In this posture it is our duty to examine the evidence and decide the case on our own judgment, accepting as true the findings of the judge based on oral testimony unless they are shown to be plainly wrong.  See *Flavell* v. *Flavell*, 324 Mass. 362, 363; *Hanrihan* v. *Hanrihan*, 342 Mass. 559, 564; *Wilson* v. *Jennings*, 344 Mass. 608, 611; *Sulmonetti* v. *Hayes*, 347 Mass. 390, 391–392; *Burlingham* v. *Worcester*, 351 Mass. 198, 199.

We summarize the facts from the findings of the judge: The plaintiff was established in 1851 and has since conducted its life insurance business under the name "Massachusetts Mutual Life Insurance Company."  As a mutual company it has paid dividends to its policyholders every year since 1861.[1]  It is licensed to do business in all States, the District of Columbia, Puerto Rico and Canada.  It operates on a general agency basis with 251 agency offices all

---

[1] See generally G. L. c. 175, §§ 73–94, for provisions relating to mutual insurance companies.

using its name throughout its licensed area. The plaintiff has a distinguished group of agents in its force. In the New England area, it has its home office in Springfield, two general agency offices in Boston, and other offices in Springfield, Framingham, Worcester, Wellesley and Northampton, Massachusetts, as well as three offices in Maine, two in New Hampshire, one in Rhode Island and five in Connecticut. The plaintiff writes widely diversified lines of insurance, including ordinary life, individual annuity, and pension trust plans, as well as group life, group annuities, and accident and health plans. It is the seventh largest mutual life insurance company in the United States measured by its assets and during the decade 1955 to 1965 had the highest growth rate among the largest mutual companies. The plaintiff is and has been for many years in excellent financial condition, most ably managed and enjoys an excellent reputation. At the end of 1966 it had in force over 1,000,000 policies representing a volume in excess of $13,700,000,000; its assets exceeded $3,400,000,000. In 1966 it had a net operating gain of over $16,000,000 and paid dividends to policyholders of nearly $80,000,000. In 1966 it had a surplus of over $200,000,000 and a lapse ratio of about 4%.[2] In 1965 the reinsurance rate of the plaintiff was about 4% of the total in force dollar volume.

Since its organization the plaintiff has used its name "Massachusetts Mutual Life Insurance Company" on all its policies. Also on every policy is a picture of the plaintiff's home office and date "organized 1851." Until 1964 the plaintiff used a letterhead carrying its name across the top, the word and date "Organized 1851" immediately below the name, and the words "In Our Second Century of Service" at the bottom of the page. In all its advertising the plaintiff uses its name, sometimes giving emphasis to the first two words "Massachusetts Mutual" and other times giving equal emphasis to each word in its name. The

---

[2] "Lapse ratio" is determined by dividing the number of policies which lapse during a given year by the number of policies subject to the risk of lapse during the same year.

plaintiff advertises in different media, including trade and consumer magazines, newspapers, flyers and direct mail. In 1966 the plaintiff spent over $960,000 on advertising ($878,000 in 1965, $1,000,000 in 1964, $933,000 in 1963, and $902,000 in 1962).

The defendant, which also engages in the life insurance business, was incorporated August 15, 1963, under the name "Massachusetts Life Insurance Company." The plaintiff never consented to the defendant's use of this name. The defendant is a stock company and does not pay dividends to its policyholders.[3] One of its goals is to build profits for stockholders to whom it reports. It is presently licensed to do business only in the six New England States, but has policyholders residing in thirty-eight States. It intends to apply for authority to do business in all States except New York, and has already filed applications in New Jersey, Pennsylvania, Delaware and Maryland. The defendant has its home office in Boston. It also operates on the general agency system and although it has about 285 licensed agents in New England, only a few of this number devote their full time to the defendant's business. Apart from its home office the defendant has twenty-two other offices in Boston and numerous other offices scattered throughout the Commonwealth, two offices in Maine, six in New Hampshire, eleven in Rhode Island and thirty-one in Connecticut.

The defendant's president, Charles Breslin, its primary organizer, receives a salary of $50,000, is the largest single stockholder, owning or controlling 525,000 shares, about 35% of the total shares issued, and holds a stock option on 30,000 additional shares. John J. Byrne, secretary, treasurer and actuary of the defendant, Wallace H. Heller, a vice-president, and Edgar H. DeGraeve, comptroller, also hold options on substantial numbers of shares. Stock options may also be given to agents as an inducement. They present an opportunity to profit from a rise in the market price

---

[3] See generally G. L. c. 175, §§ 57–62, for provisions relating to stock insurance companies.

of the stock without risk and are an incentive for key men to remain with the company.

At the end of 1965 the defendant's in force dollar volume of insurance was over $51,600,000 and its assets approximately $3,000,000. In the same year it sustained an operating loss of over $246,000, had a lapse ratio of about 24%, and a reinsurance rate of approximately 25%. The high lapse ratio, caused in part by an unstable agency force, has adversely affected its earnings. The relatively substantial amount of reinsurance adds to the operating costs of the defendant and consequently reduces profits.

The defendant's president with twenty-six years of experience in the life insurance business in the Boston area, was long aware that the plaintiff was an old life insurance company with substantial assets, a broad line of policies and a well-known name, and that as a mutual company it enjoyed a competitive advantage over the defendant, a stock company. The defendant, in a registration statement, had pointed out that the life insurance business was highly competitive and that many companies, "as compared with the Defendant, had been in business for longer periods of time, offered more diversified lines of coverage, had substantially greater resources, larger selling organizations, highly skilled personnel of long experience in every department, a broader diversification of risks and *more well-known names*" (emphasis supplied).

About August, 1963, Breslin, with knowledge of the plaintiff's policies, participated in the design of the defendant's policy form. On the policy form appear the words "Massachusetts Life Insurance Company"; as on the plaintiff's form, "Massachusetts" is emphasized and the words "Life Insurance Company" are deëmphasized; the defendant's policy form contains the picture of a building (Faneuil Hall) and the date "1742" apparently referring to Faneuil Hall. This combination of name, old building and date is used in other materials in the conduct of the defendant's business, including advertising. The defendant's letterhead on some designs contains the printed words "Dis-

tinguished Service" at the bottom in a way similar to the words "In Our Second Century of Service" on the plaintiff's letterhead. DeGraeve, who designed some of the defendant's letterheads, had definite knowledge of other companies' letterheads.

A well-known name is an important asset in the life insurance business, a fact understood by the defendant when it selected its name in 1963. A substantial number of persons of at least average intelligence identifies the plaintiff by the name "Massachusetts Life Insurance Company" or abbreviated forms thereof. For example, in the period September, 1963, to January, 1967, the plaintiff received 2,700 pieces of mail intended for it but addressed "Massachusetts Life Insurance Company" or abbreviations thereof.[4] In 216 of these envelopes were 238 checks drawn to "Massachusetts Life Insurance Company" (or abbreviations thereof), intended for the plaintiff. Some of the 2,700 envelopes contained "checks from various debtors of the Plaintiff drawn to the order of 'Massachusetts Mutual Life Insurance Company' although the envelopes were addressed to 'Massachusetts Life Insurance Company' (or abbreviated form thereof)." "In addition to the above, the Plaintiff received in payment of various obligations, from September, 1963 to January, 1967, 256 checks and money orders drawn to the order of 'Massachusetts Life Insurance Company.'" Like the envelopes, these items were from a wide variety of senders. "The bank used by the Plaintiff's home office routinely processed these checks even though the endorsement 'Massachusetts Mutual Life Insurance Company' differed from the name of the payee 'Massachusetts Life Insurance Company' (or abbreviated form thereof). Although the Plaintiff's policyholders receive a premium notice bearing the name 'Massachusetts Mutual Life Insurance Com-

---

[4] The judge's findings include a detailed breakdown of these 2,700 pieces of mail according to the status of the sender. For example 895 pieces "came from policyholders, beneficiaries, annuitants and other individuals," 652 pieces from various businesses, 391 pieces from doctors and hospitals, 202 from various governmental agencies and jurisdictions, 169 pieces from banks, and 391 pieces from other sources including lawyers, certified public accountants and persons in the insurance business.

pany,' some still write the check for the Plaintiff's premium to the order of 'Massachusetts Life Insurance Company' (or abbreviation thereof). . . .

"For years prior to September, 1963, the Plaintiff had received checks and mail intended for it but drawn or addressed to 'Massachusetts Life Insurance Company' (or abbreviated variation thereof).

"The Plaintiff also has been referred to as 'Massachusetts Life Insurance Company' (or abbreviation thereof) in various publications. The Defendant received an 'unbelievable number' of calls from people who were seeking the Plaintiff and mistook the Defendant for the Plaintiff. Mail intended for the Plaintiff was sent to the Defendant's home office and forwarded to the Plaintiff; most of this mail was addressed 'Massachusetts Life Insurance Company' 40 Broad Street, Boston. . . . Two of these pieces of misdirected mail were sent by the Massachusetts Insurance Department."

In choosing a name the defendant has adopted a name differing by only one word from the plaintiff's name and identical with the name by which the plaintiff is known to an appreciable segment of the insurance industry and the public which deals with the insurance industry. "[K]nowing of the Plaintiff's established reputation as a venerable leader in the industry, it sought in its advertising not only on its stationery and policies but in magazine advertising to create the impression of venerability by using a 'logo', bearing the date 1742. To be sure, the date refers to Faneuil Hall pictured in the 'logo', but . . . the use of the date referable to the building was with the hope of suggesting age in the new company. It is inconceivable that the Defendant had any intention of conducting its business in such a way as to leave the Plaintiff 'the whole benefit of such reputation as it had gained in the community.' On the contrary . . . in choosing the name that it chose the Defendant was aware of the fact that the public might be led to do business with it, thinking that it was doing business with the well-established, venerable eminently successful Plaintiff."

There is a likelihood of such confusion by members of the public of at least average intelligence. The continued use by the defendant of the name it has "chosen to assume will result in unfair competition with the Plaintiff also because of the likelihood of injury to its business reputation or at least a dilution of the distinctive quality of its name which had acquired a secondary meaning through long use and long and frequent identification of the Plaintiff as Massachusetts Life Insurance Company."

On the facts found by the judge the plaintiff is entitled to relief under general equitable principles stated in *Monroe Stationers & Printers, Inc.* v. *Munroe Stationers, Inc.* 332 Mass. 278, 280, and frequently applied. See cases collected in *Hunt Potato Chip Co.* v. *Hunt,* 340 Mass. 371, 374–375. The plaintiff is also entitled to relief under the provisions of G. L. c. 110, § 7A, inserted by St. 1947, c. 307 [5] (the so called anti-dilution statute). *Skil Corp.* v. *Barnet,* 337 Mass. 485, 488–491, and cases cited. *Great Scott Food Mkt. Inc.* v. *Sunderland Wonder Inc.* 348 Mass. 320, 323. *Tiffany & Co.* v. *Boston Club, Inc.* 231 F. Supp. 836 (D. Mass.). We need not consider whether the plaintiff would also prevail under G. L. c. 155, § 9, as appearing in St. 1964, c. 484, § 1. No intimation of an adverse result to the plaintiff is intended.

We address ourselves to the principal issue, the scope of the relief which should be granted to the plaintiff. Although the terms of the judge's order for decree that the defendant be permanently enjoined from "use of the name 'Massachusetts Life Insurance Company' as its corporate name" were never incorporated into the final decree, which is the subject of appeal, the defendant nevertheless makes the order for decree the principal target of its attack. We do not pause to discuss the issue, now academic, in detail. It is sufficient to say that the judge's findings establish

---

[5] "Likelihood of injury to business reputation or of dilution of the distinctive quality of a trade name . . . shall be a ground for injunctive relief in cases of . . . unfair competition notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services."

356 Mass. 287                        295

Massachusetts Mutual Life Ins. Co. v. Massachusetts Life Ins. Co.

that the words "Massachusetts Life Insurance Company" in the insurance industry and in the public mind have come to mean the plaintiff. Accordingly the defendant is not entitled to use that name even though it is not the official name of the plaintiff.

Whether, however, as the final decree provides (in paragraph 2), the defendant should be permanently enjoined "from using in . . . [its] corporate name or otherwise the word 'Massachusetts' or abbreviations thereof, separately or in combination with other words," merits consideration. There is no doubt of the court's power in cases of this sort to enjoin the use of a geographical name or family surname. The wisdom of the exercise of the power oftentimes turns upon whether, in the particular case, it is necessary to achieve the desired result. It is in the particular case that the considerations which weigh for or against the "two desiderata" of preventing harm to the first in the field and affording fair opportunity to the newcomer cease to be abstract and become specific and concrete and measurable. The restriction imposed should be no more than is reasonably necessary. This is the lesson of our decisions. See, for example, *American Waltham Watch Co.* v. *United States Watch Co.* 173 Mass. 85, 87–88; *Viano* v. *Baccigalupo*, 183 Mass. 160; *S. M. Spencer Mfg. Co.* v. *Spencer*, 319 Mass. 331, 337–339; *Skil Corp.* v. *Barnet*, 337 Mass. 485, 494–495. Of concrete importance in the present case is the fact that the parties do not compete for the sale of watches, peanuts, stencils or tools, as in the cited cases, but, rather, compete to become the depository of the savings of large numbers of people throughout their lifetime. When this is the prize, there is a public interest that the likelihood of confusion or mistake in the identity of the competitors be reduced.

It is to be noted that neither party to this litigation is as free as is an ordinary commercial corporation in the selection of a corporate name. The ingredients for the names of both parties are to some extent regulated by statute. The plaintiff by special act of the Legislature in 1851, c. 160, was incorporated and given the name which it has continuously

maintained. The defendant, not being organized on the mutual plan, may not use the word "mutual" in its corporate name. The plaintiff must use it. Under the provisions of G. L. c. 175, § 49, as amended through St. 1968, c. 391, § 8, "the name of a corporation" organized to do business as is the defendant "shall contain the word 'insurance' or 'assurance' . . . and . . . the word 'life' or the words 'variable annuity life.'" Thus the defendant in its corporate name must, under the statute, use the word "life" and the word "insurance" or their statutory alternates. It is almost inevitable that the word "company" or "corporation" or a similar term would be added to denote a business enterprise. The confusion is caused by the defendant's use of the word "Massachusetts" immediately before the word "Life." This deliberate and sensitive sequence of words was used in the defendant's corporate name and again in the name it proposed to the Commissioner following the judge's order for final decree. It must be avoided.

It could be avoided and yet permit the word "Massachusetts" or an abbreviation in the corporate name. The word "Massachusetts" could be used in the defendant's corporate name in such a way as to perform the legitimate purpose of informing the public of its place of origin and principal place of business without causing confusion with the plaintiff. It may be inferred from the judge's findings that the defendant has a penchant for affiliation with Faneuil Hall. By way of illustration and not as a suggestion, if the defendant were to assume the name "Faneuil Life Insurance Company of Massachusetts," there would be no likelihood of confusion with the plaintiff nor, so far as we are aware, with any other company.

We think that an opportunity should be given to the defendant to reconsider its position before a final and absolute ban is laid down on the use of the word "Massachusetts" in its corporate name.

The final decree is affirmed with the exception of paragraph 2 thereof which is to be struck, not because it is essentially wrong but because it may go beyond the reasonably

necessary requirements of the case. Pending the determination of a new paragraph 2, the Superior Court may enter whatever interlocutory order may be appropriate. After such hearing and within such time as the judge in his discretion may order, a new paragraph 2, consistent with this opinion, may be inserted in the decree. If, after hearing, the original paragraph 2 is nevertheless reinstated, it will be deemed to be consistent with this opinion. The plaintiff is to have costs of appeal.

*So ordered.*